07-4618-cv
Gorzynski v. JetBlue Airways Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2008

(Argued:    January 21, 2009                     Decided:    February 19, 2010)

Docket No. 07-4618-cv

————

DIANE GORZYNSKI,

*Plaintiff-Appellant*,

– v. –

JETBLUE AIRWAYS CORPORATION,

*Defendant-Appellee*.

————

Before: WALKER, CALABRESI, WESLEY, *Circuit Judges.*

Plaintiff appeals the dismissal, on summary judgment, of her employment discrimination action based on claims that she suffered a hostile work environment, age discrimination, and retaliation for complaints of race and age discrimination. Plaintiff complained to her supervisor, who was also her harasser, regarding the allegedly hostile work environment. Although the employer's sexual harassment policy provided that Plaintiff could have complained to other persons besides her supervisor, we hold that the employer is not, as a matter of law, entitled to

-1-

the *Faragher/Ellerth* affirmative defense. Instead, we must look to the facts and circumstances of each case to determine whether, by not pursuing other avenues seemingly provided in the employer's sexual harassment policy, a plaintiff unreasonably failed to take advantage of the employer's preventative measures. Plaintiff has presented genuine issues of material fact with respect to her hostile work environment, age, and retaliation claims, and accordingly the decision of the District Court is VACATED and REMANDED for further proceedings.

> JOSEPHINE A. GRECO, Kevin P. Wicka, Offerman, Cassano, Greco, Slisz & Adams, LLP, Buffalo, N.Y., *for Plaintiff-Appellant.*
>
> ALISON N. DAVIS, Little Mendelson, P.C., Washington, D.C., *for Defendant-Appellee.*

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Diane Gorzynski alleges that her former employer, JetBlue Airways Corporation ("JetBlue") discriminated against her based on age and gender and retaliated against her for complaining to her supervisors about that age and gender discrimination, as well as race discrimination against other employees, thereby violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. Upon JetBlue's motion for summary judgment, the United States District Court for the Western District of New York (Elfvin, *J.*) dismissed Gorzynski's Complaint in its entirety. In particular, the District Court found that JetBlue was entitled as a matter of law to the *Faragher/Ellerth* affirmative defense to Gorzynski's hostile work

environment claim.[1] JetBlue argues that because Gorzynski complained of sexual harassment to her supervisor, who was also the harasser, rather than pursing alternative options listed in her employee manual, it is shielded from liability. We must therefore determine whether, for the purposes of the *Faragher/Ellerth* defense, it is unreasonable as a matter of law for an employee to complain of sexual harassment to his or her harasser if that person is designated in the employer's plan as one of several persons with whom to lodge complaints. We hold that it is not, and conclude that whether a plaintiff's complaints to the harasser constitute reasonable availment of an employer's sexual harassment policy is to be determined by the specific facts and circumstances of each case. Moreover, we find that Gorzynski has presented genuine issues of material fact with respect to her hostile work environment, age, and retaliation claims, which are made evident through examining several omissions and incorrect accounts of the record in the District Court's decision. Accordingly, the grant of summary judgment is vacated, and the case is remanded for further proceedings.

## Background

The following facts are construed, as they must be, in the light most favorable to the plaintiff. *See Hotel Employees & Rest. Employees Union, Local 100 v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002). In January 2000, JetBlue hired Gorzynski to work as a customer service agent for its operations at the Buffalo International Airport (the "Buffalo Station"). She was fifty-four years old at the time. In May 2000, she was promoted to the position of Customer Service Supervisor, and stayed in that position until her employment was terminated on July 5, 2002.

---

[1] The *Faragher/Ellerth* defense is discussed more fully *infra* at **16-19**.

**A.     JetBlue's Corporate Hierarchy for the Buffalo Station**

In addition to Gorzynski, the Buffalo Station had three other Customer Service Supervisors from January 2000 to July 2002: (1) Gina Boyer Galipeau, a 38-year-old female; (2) Kevin Crowley, a 30-year-old male; and, after Crowley was promoted to Ground Operations Instructor, (3) Eli Cruz, a 37-year-old male. The Customer Service Supervisors were responsible for overseeing customer service crewmembers who were in turn responsible for conducting the customer check-in and boarding pass process, tagging baggage, greeting and parking aircraft, maintaining safety compliance, unloading and loading luggage, maintaining ground equipment, and performing all other duties related to the aircraft, including interior cleaning. Customer Service Supervisors were held to a higher professional and performance standard than other crew members.

The Customer Service Supervisors, including Gorzynski, were supervised by the General Manager of the Buffalo Station. At the beginning of Gorzynski's employment, the General Manager was Irene Goosley, a female in her forties. In October 2001, Goosley was fired and James Celeste was hired as the General Manager of the Buffalo Station by William Thro, the Manager of Stations—a regional manager responsible for overseeing the General Managers of several JetBlue stations. Finally, at the top of the relevant hierarchy was Judy Zimmer, a 52-year-old female, who served as the Director of Airports.

**B.     Alleged Instances of Discrimination and Subsequent Complaints**

Gorzynski alleges multiple instances of disparate treatment based on age and gender that she experienced at the Buffalo station, and testifies that she complained numerous times about such treatment. The evidence she presents to support her hostile work environment, disparate

treatment, and retaliation claims is as follows.

**1. Hostile Work Environment**

Gorzynski's hostile work environment claim is based in part on multiple comments made by her supervisor Celeste, which Gorzynski contends constitute sexual harassment. For example, after assisting a crewmember in cleaning up a spill of a passenger's breast enhancement cream, Celeste made massaging gestures with his hands and stated that he had the impulse to massage breasts. On another occasion, after observing a female passenger with large breasts, Celeste and another crewmember made a comment about wanting to suck on the woman's breasts. Celeste was also overheard telling a crewmember that he had to get home to watch his children so his wife could go to a "sex toy" party, and asked a female crewmember if she had "gotten enough loving" over the weekend.

In the spring of 2002, while giving a final boarding call for a flight over the loudspeaker, Celeste announced that a female crewmember, Cheryl Harrison, was a former pin-up girl. During another final boarding call around the same time, Celeste announced that Gorzynski had been a table dancer in her life prior to joining the airline industry. Both Harrison and Gorzynski were humiliated and walked off the aircraft. Gorzynski complained to Celeste about these comments. Celeste did not apologize and no disciplinary action was taken against him.

Besides these comments, on some occasions Celeste would grab female crewmembers, including Gorzynski, around the waist area and, on other occasions, he would attempt to tickle them. One female crewmember testified that she noticed Celeste looking at women as if he were mentally undressing them, and Galipeau, another Customer Service Supervisor, testified that Celeste was very sexual and frequently made inappropriate comments and gestures.

**2. Disparate Treatment**

Gorzynski presents a number of instances where she was treated differently from younger Customer Service Supervisors, especially by Celeste, her supervisor. In December 2001, Celeste gave Gorzynski a negative performance evaluation. Celeste had been hired in December 2001, and although he had only worked with Gorzynski for one week, he prepared and submitted an evaluation of her for the entire year, giving her low ratings: two out of five in fifteen categories, three out of five in seven categories, and two out of five overall. This was so despite the fact that she had not been written up for any disciplinary problems that year. For this same period, Gorzynski was evaluated by an anonymous crewmember who rated her as a four out of five in seventeen categories and a five out of five in eleven categories. Moreover, at the same time, Celeste evaluated Crowley, a then-30-year-old Customer Service Supervisor, and gave him an overall rating of four out of five in the face of the fact that Crowley had been written up and verbally counseled on numerous occasions throughout that same year, 2001. Crowley was then promoted.

After Crowley was promoted, he sent a series of emails to all the Buffalo Station employees relating an incident in which he and another male employee were intoxicated while on a company trip and vandalized hotel property. Despite sending these emails, Crowley was not disciplined. Zimmer, the Director of Airports, testified that Celeste should have taken disciplinary action with respect to this conduct.

According to Gorzynski, also probative of Celeste's discrimination is a conversation in early 2002 in which Celeste told Gorzynski that she reminded him of one of his aunts who was in her eighties. Beyond mentioning his aunt's age, Celeste allegedly told Gorzynski that his aunt

was a nice person, but difficult. Gorzynski complained to Thro about this comment, but he told her that she need not be concerned.

In addition to these allegations, Gorzynski points to multiple instances where JetBlue's rules and policies were enforced differently on the basis of age and sex. Following September 11, 2001, JetBlue was forced to change its policies on bag searching and screening of passengers. Gorzynski received training regarding these new policies. Despite the directive that all JetBlue employees were supposed to be trained in this fashion, Gina Galipeau and Kevin Crowley (both younger Customer Service Supervisors) refused to complete the training and to assist in the performance of this work. Although their lack of participation made it more difficult to complete these searches, Celeste did not do anything to discipline Galipeau or Crowley.

In February or March of 2002, less than four months before Gorzynski was fired, she had a meeting with the General Manager, Thro, and complained about the unequal treatment of employees based on age which was occurring at the Buffalo Station, and in particular about the fact that Crowley and Galipeau were still not trained to do bag searching six months after the directive. Immediately after Gorzynski made her complaints, Thro told her that Eli Cruz, a male crewmember in his thirties, stated that on one occasion he felt uncomfortable with Gorzynski because she spoke in a harsh manner. According to Gorzynski, Thro asked her to "reinvent herself." Thro placed Gorzynski on 60-day probation. Later, Celeste reported to Thro that no inappropriate behavior recurred within the 60-day period.

As another example of disparate enforcement of the rules, Gorzynski alleges that Galipeau was consistently late for her shifts without any discipline. A supervisor being late for a shift is allegedly particularly bad because the supervisor is supposed to brief the employees

before the shift starts and provide them with the cash necessary to operate the counter. Galipeau also violated JetBlue's rules by scheduling her significant other for positive space (rather than standby) on JetBlue flights. Similarly, Galipeau and Crowley were regularly permitted time off without having to use the limited amount of personal time off allotted to each supervisor. Gorzynski was not given the same privilege.

Gorzynski also alleges that JetBlue's preferential treatment of younger crewmembers, who were not Supervisors like herself, is probative of her claims. Lee Gojmerac, a 21-year-old female who worked as part of the ramp crew, violated rules, such as the smoking policy, without discipline from Celeste. Gojmerac also mocked and ridiculed other crewmembers and spread rumors about them. Although other crewmembers complained, Celeste did nothing. Gojmerac and another female employee in her early twenties, Nicole Helms, slept through the arrival of an aircraft. Gorzynski woke them up and then reported the incident to Celeste. Instead of issuing any discipline, he "got on bended knee and apologized to Ms. Gojmerac because she was startled when Ms. Gorzynski attempted to wake her." Similarly, Gorzynski contends, Nate Neubaur, a male crewmember in his twenties, also received preferential treatment. He violated multiple policies: (a) by opening a vibrating bag while not in the presence of another supervisor, (b) by altering United States Postal Service sheets without having them verified by the Postal Service, and (c) by holding onto foreign currency that had been reported missing by a passenger. He also guided a jet bridge operated by Galipeau into a truck. Despite all of these incidents, he was not disciplined. Lastly, Gorzynski describes a general atmosphere where Celeste "treated older women as if they were not there." He did not converse with the older female crewmembers, but regularly spoke with Gojmerac and Helms.

### 3. Complaints about Race Discrimination

Gorzynski further alleges that she complained about racial discrimination—though it was not directed at her—on at least two instances. First, in approximately May 2002, Celeste was walking up the jet bridge in an "irregular fashion" and told Cheryl Harrison and Gorzynski that he was "walking like a brother." He said that he was acting like a "brother" and that he had lived with "brothers" so he knew how "brothers" act and walk. Gorzynski "knew that Cheryl Harrison was very offended" by these comments, so Gorzynski complained to Celeste and said that his comments were not appropriate.

Second, in June 2002, Gorzynski went with Eric Moses, an African-American employee, to complain to Celeste about racial discrimination that Moses allegedly faced. Moses told Gorzynski that he believed he was discriminatorily denied the opportunity to apply for the Ground Support Equipment Coordinator position which was given to David McMahon, a white male. At the meeting, Celeste responded by stating that Moses had not applied for the position. This upset Moses, and he indicated that he would have been interested in the position had he known about it. He asserted that he had never been made aware the position was available because it was not posted. Gorzynski expressed her concern to Celeste that Moses believed he had been denied equal opportunity because of his race. Celeste told her that he would take care of the situation, but nothing was done to investigate or respond to the complaint. Gorzynski alleges that she noticed that Celeste began to be very hostile toward her as a result of the complaints made about unequal treatment at the Buffalo Station.

### C. The McMahon Incident and Gorzynski's Termination

On the morning of June 25, 2002, a Federal Aviation Administration ("FAA") inspector

came to the Buffalo Station and reviewed the standard operating manual section of Gorzynski's computer. Gorzynski observed that the inspector had looked at the fire extinguisher section, and she was accordingly concerned that he was going to inspect the fire extinguishers in the ramp. The inspector advised that he would be back after the next aircraft arrival. Consequently, Gorzynski asked the rampers to check to see if JetBlue was in compliance and if all the fire extinguishers were in the right places. Crewmembers reported that there were some missing extinguishers.

At the time, McMahon had been gone for several days and crewmembers had come to Gorzynski, as a supervisor, to complain about broken equipment and various safety issues. As Galipeau testified, McMahon did not keep a set schedule and was frequently gone, which was problematic because he was not there at times when the employees needed him. As repair issues began to pile up, Gorzynski felt there needed to be better communication with McMahon to address these recurring problems, and suggested that the crewmembers create a list of needed repairs, along with a file on each piece of equipment so as to avoid any duplication of equipment complaints for McMahon. When McMahon returned later on the same day (June 25, 2002), Gorzynski told the ramp crewmembers to provide McMahon with the current repair list. She also informed McMahon of the issue concerning the fire extinguishers and asked him to help her prepare for the imminent FAA inspection.

McMahon, who allegedly admitted to being sensitive to criticism, objected to being presented with the list of repairs. He sent an email to Celeste about the incident. In his email, McMahon described walking to the ramp and being approached by a crewmember who said "Watch out for [Gorzynski], she has it out for you . . . [and says] we should be keeping an eye on

. . . how long it takes him to fix this equipment and so on." As he made it to the ramp, McMahon described being surrounded by five crewmembers and Gorzynski, who said "OK guys, give him the list." After that, the crewmembers "fired a list, just pummeling [McMahon] . . . ." As JetBlue describes the incident, "Celeste received a complaint that Gorzynski once again was making inappropriate comments about a crewmember to other crewmembers. He also learned that she had encouraged fellow crewmembers to berate another crewmember."

Gorzynski asserts that she did not berate McMahon nor encourage anyone else to do so, but rather encouraged crewmembers to present him with the list of repairs. McMahon testified that other than this one incident, he had no complaints with respect to Gorzynski and thought she did her job well. He also denied that Gorzynski spoke to him in an unprofessional manner that day. Judy Zimmer testified that Gorzynski's suggestion of a list could potentially have been a way to resolve the problem with McMahon and that Gorzynski had every right to ask McMahon whether he knew where the missing extinguishers were. Furthermore, Galipeau testified that McMahon told her he was out to get Gorzynski and would do whatever he could to make life miserable for her or get her out of JetBlue.

Thro and Celeste began an investigation into McMahon's complaint arising from this incident. As part of this investigation, they obtained written statements from McMahon, Cruz, and Gojmerac. They did not interview Eric Moses, Kenneth Swiateck, or Gorzynski, all of whom were present for the incident or had knowledge of it. Zimmer admitted that these persons should have been interviewed. Gojmerac's witness statement confirmed several of McMahon's allegations, stating that Gorzynski "accosted" him with a litany of tasks that needed to get done and also "got Eric [Moses] going" about things that needed to be done. Upon receipt of

Gojmerac's statement, Thro and Celeste met with Gorzynski on July 3, 2002, and told her that she created a hostile work environment. Gorzynski says that she was not provided with any specifics and was not informed about McMahon's complaint until discovery. Thro then recommended to Zimmer that Gorzynski should be fired, and Zimmer agreed. On July 5, 2002, JetBlue terminated Gorzynski's employment.

JetBlue replaced Gorzynski with Gojmerac, a member of the ramp crew who was twenty-two years old at the time and allegedly violated various JetBlue rules. Gojmerac had graduated from high school and then worked at a pizzeria waiting tables and answering phones until being hired by JetBlue in June 2000. Celeste admitted that Gojmerac did not meet the minimum qualifications for Gorzynski's position at the time that Gojmerac was hired.

**D.      Gorzynski Files Suit**

In response to her firing, Gorzynski filed this employment discrimination action, asserting claims for age and gender discrimination and retaliation for activity protected by Title VII, the ADEA, and state law. JetBlue moved for summary judgment, traversing some of Gorzynski's factual claims and arguing that she was terminated due to her "unsatisfactory interpersonal skills." Upon JetBlue's motion, the District Court dismissed Gorzynski's suit in its entirety.

**Discussion**

On appeal, Gorzynski claims that she was subjected to a hostile work environment, discriminated against based on her age, and retaliated against for complaining about this gender and age discrimination as well as race-based discrimination against other employees.[2] This Court

---

[2] Gorzynski does not appeal the dismissal of her disparate treatment claim based on gender alone, so we treat that claim as waived.

reviews the District Court's grant of summary judgment *de novo.* *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted). In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Our Court has repeatedly emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb*, 521 F.3d at 137. Where an employer acted with discriminatory intent, "direct evidence of that intent will only rarely be available, so . . . affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* (internal quotation marks and citation omitted). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, *see Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996), and show more than "some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**I.      Hostile Work Environment**

In dismissing Gorzynski's sexual harassment claim, the District Court did not decide whether the evidence of sexual comments and touching amounted to an "objectively hostile

working environment." Finding that it could "cogently articulate a rationale" both ways, it avoided this "difficult question" and instead found that JetBlue was entitled to an affirmative defense—the so-called *Faragher/Ellerth* defense. We follow the traditional route and first ask whether the plaintiff has presented sufficient evidence of a hostile work environment, and only then consider whether the defendant established the elements of the *Faragher*/*Ellerth* defense. We conclude that Gorzynski has provided sufficient evidence to support her hostile work environment claim. We then find that the *Faragher*/*Ellerth* defense does not preclude that claim at the summary judgment stage because there is a genuine issue of material fact as to whether her efforts to remedy that hostile work environment were reasonable.

In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (internal quotation marks omitted). A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). Generally, unless an incident of harassment is sufficiently severe, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). Accordingly, to analyze a hostile work environment claim, we are required to look to the record as a whole and assess the totality of the circumstances, *see Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001), considering a variety of factors including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). We must also consider the extent to which the conduct occurred because of the plaintiff's sex. *See Alfano*, 294 F.3d at 374.

As recounted earlier, the evidence of a hostile work environment is that Celeste made numerous (approximately six) sexual comments and, on multiple occasions, grabbed Gorzynski and other women around the waist, tickled them, and stared as if he were mentally undressing them. Among the comments made by Celeste were his remarks about wanting to suck on or massage breasts and his announcements over the loudspeaker during two final boarding calls that Gorzynski and Harrison had previously worked in sexually provocative professions. This alleged behavior occurred over a period of seven months. Gorzynski alleges that, when viewed collectively, the quantity, frequency, and severity of the conduct and comments are sufficiently continuous and concerted to be deemed pervasive and damaging to her work environment.

Assuming *arguendo* that no single one of the comments or instances of physical conduct was sufficiently egregious on its own, when taken together they do describe a work environment in which a jury could find that men, including Gorzynski's supervisor, were able to—and did at will—comment inappropriately on women as sexual objects. The evidence does not reveal a "mere offensive utterance," but a pattern in which female employees such as Gorzynski could expect sexual remarks and other harassment at any time. The fact that other women in addition to Gorzynski testified to the harassing and pervasive nature of Celeste's behavior further supports her claim. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415-16 (10th Cir. 1987) (explaining that incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of a hostile work environment claim because one of the critical inquiries is the "general work atmosphere" as

-15-

well as specific hostility to the plaintiff). Given the short period of time in question and the quantity of comments, touching, and other conduct alleged, we find that Gorzynski has created a genuine issue as to whether she faced a hostile work environment.

Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer. *Alfano*, 294 F.3d at 373. When, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But even then the defending employer may be permitted, subject to proof by a preponderance of the evidence, to raise the *Faragher/Ellerth* affirmative defense to liability or damages.[3] *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807; *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101-02 (2d Cir. 2006). This defense consists of two elements: that (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

As to the first element, JetBlue maintained a formal, written sexual harassment policy that was contained in the employee handbook, called "The Blue Book." Gorzynski

---

[3] An employer may raise the *Faragher/Ellerth* defense only if either (1) the employee's supervisor took no "tangible employment action," which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment. *See Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765. Gorzynski argues that her termination—a "tangible employment action"—was part of Celeste's sexual harassment, and hence that JetBlue is not permitted to raise the *Faragher/Ellerth* defense. We need not address whether Gorzynski's termination was "linked to the supervisor's discriminatory harassment," *Ferraro*, 440 F.3d at 102, because we find that, even assuming JetBlue can raise the defense at the summary judgment stage, the defense fails.

acknowledges receiving a copy when she was hired. With respect to reporting instances of discrimination or harassment, the policy states in pertinent part that "any Crewmember who believes that he or she is the victim of any type of discriminatory conduct, including sexual harassments [sic] should bring that conduct to the immediate attention of his or her supervisor, the People Department or any member of management."[4] A prompt investigation process is then described. The policy also states that "[r]etaliation in any form against a Crewmember who complains of discrimination or harassment is strictly prohibited and will result in appropriate disciplinary action," and a "supervisor to whom a Crewmember brings a complaint . . . but who fails to take appropriate action to resolve it will also be disciplined." This policy specifically states that it applies to all forms of harassment and discrimination. Gorzynski does not argue that the policies described in the Blue Book are insufficient with respect to the first element of the *Faragher/Ellerth* defense.

The second—and contested—element requires JetBlue to demonstrate that Gorzynski unreasonably failed to take advantage of the policy described in the Blue Book. The District Court found that JetBlue met this burden after concluding that "Plaintiff has presented no evidence that she has complained to *anyone* regarding *any* of the conduct she now alleges constitutes sexual harassment." But the record belies this finding. Gorzynski's affidavit in opposition to summary judgment avers that she complained to Celeste, among other things, about the comments he made over the loudspeaker in the airport regarding her and Harrison, and that he neither apologized nor faced any disciplinary action. Indeed, in a footnote the District Court acknowledges this complaint, but then fails to credit it with any legitimacy because it was not

---

[4] The People Department is JetBlue's human resources division.

-17-

addressed in Gorzynski's deposition testimony.  We have held that a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony.  *See Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).  If, however, the allegations in the affidavit, rather than contradicting, explain or amplify prior deposition testimony, then the affidavit may create a genuine issue of material fact sufficient to defeat summary judgment.  *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).  JetBlue does not contend that the affidavit is contradictory, and, for purposes of summary judgment, we take as true Gorzynski's allegation that she complained to Celeste about his sexually harassing behavior.

JetBlue, however, argues to us that even conceding that Gorzynski complained to Celeste, she did not reasonably avail herself of its sexual harassment policy because she complained only to her harasser.  There is no doubt that Celeste was her supervisor and was the first person designated in the Blue Book's policy as the one to whom complaints should be addressed. Nevertheless, JetBlue contends that, as a matter of law, it was unreasonable for Gorzynski not to take advantage of the alternate avenues that JetBlue provided, such as complaining to other members of management or the People Department.[5]  We reject such a brittle reading of the *Faragher/Ellerth* defense.  We do not believe that the Supreme Court, when it fashioned this

---

[5] In support, JetBlue asks the Court to consider the Fifth Circuit's decision in *Lauderdale v. Texas Department of Criminal Justice*, 512 F.3d 157, 164-65 (5th Cir. 2007) (finding that it was unreasonable for the plaintiff not to report the harassment to another person listed in the employer's harassment policy once her initial complaint was ineffective).  But *Lauderdale* does not support the District Court's grant of summary judgment in the instant case.  For *Lauderdale* recognizes that "under certain circumstances an employee's failure to file a subsequent complaint would not be unreasonable, even where there are multiple reporting avenues." *Id.* at 165.  Hence it does not speak to what was reasonable in the case before us.

affirmative defense, intended that victims of sexual harassment, in order to preserve their rights, must go from manager to manager until they find someone who will address their complaints. There is no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic. Considering the courage it takes to complain about what are often humiliating events and the understandable fear of retaliation that exists in many sexual harassment situations, we decline to read the rule so rigidly. Accordingly, we hold that an employer is not, as a matter of law, entitled to the *Faragher/Ellerth* affirmative defense simply because an employer's sexual harassment policy provides that the plaintiff could have complained to other persons as well as the alleged harasser. Instead, we conclude that the facts and circumstances of each case must be examined to determine whether, by not pursuing other avenues provided in the employer's sexual harassment policy, the plaintiff unreasonably failed to take advantage of the employer's preventative measures. In some instances, it may be unreasonable for a victim of harassment to complain only to the harasser because, as a realistic and practical matter, there are other channels that are adequately indicated and are accessible and open. But, in other cases, there may be reasons why the plaintiff failed to complain to those other than the harasser, who are listed as available. And in such cases, a genuine issue of fact may be raised as to whether it was reasonable not to pursue other options.

Such a fact question exists in the case before us. JetBlue suggests that instead of complaining to Celeste, Gorzynski should have complained to Thro, the other manager at the Buffalo Station. But the evidence reveals that Thro was not receptive to receiving complaints from employees. When Gorzynski complained about disparate treatment based on age in, *inter*

-19-

*alia*, the enforcement of the luggage inspection policies, Thro responded by admonishing *her*.

Additionally, other crewmembers testified that Thro was intimidating and that they would not have complained to him for fear of retaliation. Similarly, JetBlue suggests that Gorzynski should have complained to the People Department, JetBlue's human resources department. But Gorzynski's co-worker Cheryl Harrison, also a woman over forty, was suspended within days of making a complaint about Celeste to Vincent Stabile, the Vice President of Human Resources. Given that several of the listed channels appeared to be ineffective or even threatening, a fact question exists as to whether it was reasonable for Gorzynski to believe that any other avenues would be similarly futile.

Determining whether a plaintiff has unreasonably failed to take advantage of the options provided in an employer's sexual harassment policy is not as formulaic as JetBlue would have us hold. Rather, it depends on the facts and circumstances of a given case and can, as it does here, raise a question for the jury.

## II. Age Discrimination

The District Court also dismissed Gorzynski's claim that she faced disparate treatment due to her age, in violation of both the ADEA and the NYHRL. Since this case was argued, the Supreme Court clarified the standard for prevailing on an ADEA claim in *Gross v. FBL Financial Services,* 557 U.S. ___, 129 S. Ct. 2343 (2009).[6] Prior to *Gross*, claims under the ADEA were analyzed under the burden-shifting framework set forth by the Supreme Court in

---

[6] The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL. *See Sutera v. Schering Corp.*, 73 F.3d 13, 16 n.2 (2d Cir. 1995). Accordingly, we assume, without deciding, that the Supreme Court's *Gross* decision affects the scope of the NYHRL law as well as the ADEA.

-20-

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), pursuant to which the plaintiff had the burden of demonstrating that his or her age was a motivating factor in the adverse employment action. *See Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 114-15 (2d Cir. 2007); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id*. Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination. *Holcomb*, 521 F.3d at 138. Significantly, in this respect, before *Gross*, the employee could prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find "that her dismissal was motivated *at least in part* by age discrimination." *Tomassi*, 478 F.3d at 114 (emphasis added).

*Gross* changes the latter part of this formulation by eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases. *Gross*, 129 S. Ct. at 2349, 2351; *see Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *Gross* makes clear that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor. *Gross*, 129 S. Ct. at 2352. *Gross* did not, however, reject the *McDonnell Douglas* burden-shifting framework for ADEA cases altogether. Instead, it left that issue open, noting only that the Supreme Court "has not definitively decided whether the evidentiary framework of

*McDonnell Douglas* . . . is appropriate in the ADEA context." *Id.* at 2349 n.2. Its decision explicitly focused on "the textual differences between Title VII and the ADEA that prevent . . . applying *Price Waterhouse* and *Desert Palace* [mixed-motive analysis] to federal age discrimination claims." *Id.*

Accordingly, we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (applying the *McDonnell Douglas* framework in an ADEA case); *see also United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) ("[W]e . . . are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court."). Significantly, however, we note that regardless of whether we applied the *McDonnell Douglas* framework, the facts, taken in Gorzynski's favor, suffice to meet her burden of showing a triable issue as to whether her age was a "but for" cause of her termination. In other words, as described below, Gorzynski proffered enough evidence, even without the benefit of the burden-shifting framework utilized in *McDonnell Douglas*, to create a genuine question of fact and thereby defeat summary judgment.

**A.  Prima Facie Case**

In order to establish a prima facie case of age discrimination, Gorzynski must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. *Carlton*, 202 F.3d at 134. This burden is not a heavy one, *id.*, and it is met here, as Gorzynski was over forty years old, was

undisputedly qualified for her position, was fired, and was then replaced by a woman in her twenties. *See id.* at 135.

**B. Legitimate Nondiscriminatory Reason**

JetBlue contends that it terminated Gorzynski for her "management style," "unprofessional conduct and poor interpersonal skills," and the "hostile work environment" she created. Evidence supporting JetBlue's rationale comes from the fact that Gorzynski (1) was the subject of an employee complaint, (2) was given a poor performance evaluation, (3) was told that she created discord among the crew and was placed on probation, and (4) was found, after investigation, to have inappropriately presented McMahon with a litany of repair tasks and to have encouraged other crew members to berate him.

**C. Pretext**

Because JetBlue has produced evidence that it acted for non-discriminatory reasons, Gorzynski may no longer simply rely on having made out a prima facie case. *Holcomb*, 521 F.3d at 141. We must, therefore, determine, by looking at the evidence she has proffered and the counter-evidence JetBlue has presented, whether Gorzynski has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a "but for" cause of JetBlue's decision to fire her. In this respect it is important to consider whether the explanations that JetBlue gave for Gorzynski's firing were pretextual.

The District Court stated that "Plaintiff has not produced any evidence that [JetBlue's] reasons for her termination were false or pretextual" and dismissed Gorzynski's "meager argument" that JetBlue did not adequately investigate the last incident as insufficient to carry the burden of establishing pretext. We disagree. In ruling on pretext, the District Court first noted

that "plaintiff was made aware of an employee complaint regarding her." This refers to the meeting, described above, where Thro told Gorzynski that Eli Cruz had on one occasion stated that he felt uncomfortable with Gorzynski. But the circumstances surrounding Thro's reliance on Cruz's remarks cast doubt on that reliance as a reason supporting Gorzynski's discharge. Thro told Gorzynski about Cruz's comment immediately after she complained about age discrimination and disparate treatment in enforcing the bag searching policy. It is unclear whether Thro would have brought Cruz's complaint to her attention at all had she not raised her concerns about discrimination. And this is especially so given that what Cruz had said was not serious enough for Thro to record it independently as part of any formal disciplinary process. Though passing criticisms from other employees may give support for an employer's actions against an employee, the circumstances here minimize the weight that can be accorded to this particular complaint.

Second, the District Court cited Gorzynski's negative performance evaluation. But, assuming, as we must, that the facts alleged by Gorzynski are true, the evaluation occurred under circumstances suggesting discriminatory motives. Celeste, who is accused of being responsible for much of the discrimination, conducted Gorzynski's evaluation after having supervised her for only a week. Despite the fact that she had no disciplinary write-ups, he gave her a score of two out of five. A contemporary, anonymous crewmember evaluation, instead, gave her a score of four out of five. Moreover, at the same time Celeste evaluated Crowley, a then-30-year-old Customer Service Supervisor, and gave him an overall rating of four out of five even though Crowley was written up and verbally counseled on numerous occasions throughout the preceding year. And Crowley was then promoted.

Third, the District Court relied on the fact that Gorzynski had been placed on probation. This probation followed the negative performance evaluation, which, as explained above, occurred under circumstances giving rise to a material question of pretext. Moreover, Gorzynski had completed her probationary period without incident when she was fired. It was only then that the McMahon event seemingly precipitated her discharge. But Gorzynski's allegations with respect to the McMahon incident also raise a triable question of discrimination.

Gorzynski, as Zimmer admitted, did not act improperly (a) in coordinating the formation of a list of repairs for McMahon while he was out of the office, or (b) in confronting him about the fire extinguishers given the imminent FAA inspection. Also, given that inspection, it was not unreasonable for Gorzynski to have encouraged other employees to tell him about the repairs that needed to be made. Moreover, JetBlue does not show how any of Gorzynski's actions were frivolous, malicious, or designed to annoy McMahon. And casting additional doubt on the validity of McMahon's complaint as a ground for Gorzynski's firing are (a) the testimony from another crewmember that McMahon was "out to get" Gorzynski, and (b) McMahon's own admission that Gorzynski did not speak to him in an unprofessional manner.

Lastly, with respect to the McMahon incident, it seems clear that JetBlue's investigation of McMahon's complaint was questionable at best. The company did not interview several witnesses who, Zimmer now concedes, should have been spoken to, nor did it tell Gorzynski about McMahon's complaint and allow her to explain it. Instead, JetBlue seems to have relied on the statement of Gojmerac—Gorzynski's unqualified replacement—that Gorzynski "accosted" McMahon with a litany of tasks that needed to get done and also "got [another crewmember] going" about things that needed to get done. Given the imminent FAA inspection

and the fact that McMahon was responsible for making these repairs, a jury could readily reject the notion that JetBlue fired Gorzynski based on this incident, rather than for discriminatory reasons.

Furthermore, the fact that other younger employees were not disciplined for violating numerous policies is both prima facie evidence of discrimination (i.e., it suggests that Gorzynski may have been treated differently from similarly situated co-workers), and evidence that the reasons given by JetBlue for firing Gorzynski were pretextual. We note several instances raised by Gorzynski which, at this stage, we must take as true. First, Crowley sent out inappropriate emails over the Buffalo Station email list (for which Zimmer testified he should have been disciplined) and refused to get training after September 11 to inspect bags properly and search persons in compliance with the new safety regulations. JetBlue promoted him, while it fired Gorzynski. Similarly, Galipeau refused to comply with the September 11 regulations, was consistently late for her shifts, and scheduled her boyfriend for "positive space." JetBlue contends that none of these transgressions of Crowley or Galipeau was as serious as Gorzynski's "poor management style." But, in view of the paucity of the evidence concerning Gorzynski's management style, that seems doubtful on its face and at least raises a question for the jury.

Additionally, Gorzynski presents a list of policies that younger crewmembers, although not of her same position, were allowed to break with impunity. Gojmerac violated the smoking policy, slept through the arrival of an aircraft, and mocked and ridiculed other crewmembers and spread rumors about them. When other crewmembers complained, Celeste did not discipline Gojmerac. Instead he promoted her to Supervisor after firing Gorzynski, even though he admitted she was not qualified for the job. Neubaur also allegedly violated multiple policies by

opening a vibrating bag while not in the presence of another supervisor, altering United States Postal Service sheets without having them verified by the Postal Service, and holding onto foreign currency that had been reported missing by a passenger. He also was not disciplined.[7]

Given the cumulative weight of this evidence, we believe that a reasonable juror could find, not only that the explanations given by JetBlue for Gorzynski's termination were pretextual, but also that, together with Celeste's passing comment about his aunt, it was her age that was the "but for" cause of Gorzynski's termination. Accordingly, we vacate the District Court's dismissal of Gorzynski's age discrimination claims.

In addition to her age discrimination claims, Gorzynski argued to the District Court, and to us, that she faced discrimination based on age-plus-gender in violation of Title VII and the ADEA. That is, she claimed that she was treated differently because of her status as an older woman, rather than because of age or gender acting as independent factors. In support, she contends that younger women, including Galipeau, Gojmerac, and Helms, were all treated preferentially with respect to the enforcement of JetBlue's policies and discipline. Following the Supreme Court's lead in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971), we have recognized that a plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that certain members of a protected class are not subject to

---

[7] JetBlue argues that these examples are irrelevant because they are of lower-level employees not subject to the same high standards as supervisors like Gorzynski. Although an employee's position is relevant to the analysis, employees need not be of the exact same rank to be considered "similarly situated." *See Hargett v. Nat'l Westminster Bank*, 78 F.3d 836, 839 (2d Cir. 2006) (plaintiff in race discrimination suit compared himself to two employees of lower rank who allowed strippers to perform at business meetings and were disciplined less severely). Moreover, the employer's treatment of younger workers, even if they are not similarly situated, is relevant evidence of the employer's attitude about age.

discrimination, while another subset is discriminated against based on a protected characteristic shared by both subsets. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118-120 (2d Cir. 2004); *see also Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980) (explaining the history of "plus" claims and recognizing a claim for discrimination against black females). And, as other courts have explained, where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components. *See Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) (acknowledging that "the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences" including a specific set of stereotypes and assumptions not shared by all persons of that race or gender).

Gorzynski's complaint did not contain a claim under the ADEA or Title VII based explicitly on an age-plus-sex or sex-plus-age theory of discrimination, nor need it have to survive summary judgment. Having determined that Gorzynski has provided sufficient evidence of age discrimination to reach a jury, there is no need for us to create an age-plus-sex claim independent from Gorzynski's viable ADEA claim. Even if some subset of employees protected by the ADEA were not subject to age-based discrimination, Gorzynski may still have encountered such discrimination; similarly, even if a subclass of employees protected by Title VII were not subject to gender discrimination, Gorzynski may have encountered sex-based discrimination.

**III.    Retaliation Claims**

Lastly, Gorzynski contends that the District Court erred in dismissing her claims that she was discharged in retaliation for complaining about race, gender, and age discrimination. Retaliation claims under Title VII and the ADEA are also analyzed under the *McDonnell*

*Douglas* burden-shifting test described above. To establish a prima facie case of retaliation, Gorzynski must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

Gorzynski's retaliation claim relating to race is not based on any discrimination she herself faced, but, rather, on concerns she expressed on behalf of an African-American coworker. The District Court acknowledged that Gorzynski engaged in protected activity by voicing Moses's complaint that he was passed over for McMahon's job because of his race. But the District Court found no evidence of a causal connection between this complaint and her firing. The District Court, however, erroneously stated that the complaint occurred in December 2001, when in fact—as both sides agree—it happened in June 2002, within a month of Gorzynski's discharge. "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks and alterations omitted). Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship. *See, e.g.*, *id.* at 555.[8]

---

[8] The fact, noted by the District Court, that a white employee was also upset with being overlooked for the promotion, is irrelevant for this retaliation analysis. An employee "need not establish that the conduct she opposed was in fact a violation of Title VII, but rather, only that she had a good faith, reasonable belief that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal quotation marks and

Accordingly, we find that Gorzynski established a prima facie case of retaliation for complaining of racial discrimination.

With respect to her retaliation claim under the ADEA, the District Court concluded that Gorzynski had failed to show that she had engaged in an age discrimination–related protected activity and, hence, that she had not made out a prima facie case. Though noting that Gorzynski had complained that other employees had, with impunity, violated JetBlue policies by arriving late, refusing to be trained to assist with baggage inspections, smoking, and sending inappropriate emails, the District Court found Gorzynski's litany of complaints to Celeste and Thro "provide no indication that plaintiff complained about . . . age issues." Gorzynski did allege, however, and the Court must take her allegations to be true, that she complained specifically about disparate treatment between older and younger employees. Gorzynski's affidavit in opposition to summary judgment states:

> In particular, I complained to [Thro] about the fact that Kevin Crowley and Gina Galipeau were still not trained to do bag searching or wanding despite the fact that it was over six months since that directive had been issued. I complained to him that James Celeste was not requiring them to do so and that there was unequal enforcement of the rules at the Buffalo station with respect to older employees versus younger employees.

This complaint occurred less than four months before she was terminated. Consequently, the District Court erred in finding that Gorzynski failed her minimal burden of making a prima facie case for retaliation under the ADEA.

Similarly, Gorzynski made out a prima facie case of retaliation under Title VII by alleging in her affidavit that she complained to Celeste about the loudspeaker incident in which Celeste

---

alteration omitted).

-30-

told a plane full of passengers and crew that Gorzynski was a former table dancer and that another crewmember was a former pin-up girl. Although Gorzynski did not specify when she made her complaint, she did state that the incident itself took place in May or June of 2002. Since Gorzynski was fired on July 5, 2002, she must have lodged her complaint within at most two months of her firing. Accordingly, at least for the purposes of making out a prima facie case, she sufficiently alleged a causal connection between her protected complaint about sex discrimination and her termination.

The analysis for the remainder of the burden-shifting test for the retaliation claims is similar to that of the age discrimination claim discussed above. JetBlue has articulated a legitimate nondiscriminatory reason for Gorzynski's termination, and Gorzynski has produced evidence that casts significant doubt on that rationale, leaving a triable issue as to whether JetBlue retaliated against her for complaining about prohibited discrimination.

## Conclusion

The decision of the District Court is VACATED with respect to Gorzynski's claims that she suffered a hostile work environment, disparate treatment based on her age, and retaliation based on complaining of race, sex, and age discrimination. The case is REMANDED to the District Court for further proceedings consistent with this opinion.