10-2977-cv
O'Reilly v. Marina Dodge, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19ᵗʰ day of May, two thousand eleven.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             RAYMOND J. LOHIER, JR.,
                  *Circuit Judges*.

_____

TERRENCE M. O'REILLY,

                  *Plaintiff-Appellant*,

          -v.-                                    10-2977-cv

MARINA DODGE, INC.,

                  *Defendant-Appellee*.

_____

For Appellant:          Steven Edward Laprade, Christina A. Agola (*on the brief*),
                        Christina A. Agola, PLLC, Rochester, NY.

For Appellee:           Edward G. Melvin, Costello, Cooney & Fearon, PLLC, Syracuse,
                        NY.

Appeal from the United States District Court for the Western District of New York (Siragusa, *J.*).

**ON CONSIDERATION WHEREOF**, **IT IS HEREBY ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of said district court be and hereby is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Terrence O'Reilly appeals from the district court's grant of summary judgment to Defendant-Appellee Marina Dodge, Inc. The district court dismissed O'Reilly's complaint, which alleged that Marina Dodge terminated O'Reilly's job on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law, Executive Law § 290 et seq. The district court found that "[O'Reilly]'s evidence is insufficient to permit a reasonable trier of fact to find that age discrimination was the reason for his discharge from Marina Dodge." *O'Reilly v. Marina Dodge, Inc.*, No. 08-CV-6550 CJS, 2010 WL 2553458, at \*12 (W.D.N.Y. June 22, 2010) (internal quotation marks omitted). We assume the parties' familiarity with the underlying facts, procedural history, and issues presented on appeal.

Under the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor. *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2352 (2009). This requirement, we have held, does not displace the burden-shifting framework specified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. "[W]e remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Given this authority, the district court applied the *McDonnell Douglass* framework to determine whether summary judgment was appropriate.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). At this step, the plaintiff must show that "a reasonable jury could conclude by a preponderance of the evidence that [the plaintiff's] age was a 'but for' cause of [the adverse employment action]." *Gorzynski*, 596 F.3d at 107.

### A.     Prima Facie Case

To establish a prima facie case of age discrimination, O'Reilly must show that (1) he was within the protected age group, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Id.* This burden "is not a heavy one," *id.*, and both parties agree that O'Reilly met it here. O'Reilly was 59 years old, was undisputedly qualified for his position, was fired, and was replaced by a 36-year-old man.

## B.     Legitimate Nondiscriminatory Reason

Marina Dodge contends that it terminated O'Reilly because it determined that "Mr. Kaiser would be a better option than [O'Reilly] as a result of its prior experiences with Mr. Kaiser and Plaintiff O'Reilly's continued disorganization, lackadaisical approach to his job performance, failure and refusal to embrace new initiatives to increase profitability, and his negative attitude about the workplace."  Marina Dodge has provided no contemporaneous evidence of such alleged deficiencies in O'Reilly, but it submitted various affidavits, in support of its summary judgment motion, of Marina Dodge employees who state that O'Reilly was disorganized, failed to embrace "new initiatives," and had a negative or lackadaisical attitude at times.

## C.     Pretext

Because Marina Dodge has produced evidence that it acted for nondiscriminatory reasons, O'Reilly may no longer simply rely on having made out a prima facie case.  Therefore, we must determine, by looking at the evidence he has proffered and the counter-evidence Marina Dodge has presented,[1] whether O'Reilly "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [Marina Dodge]'s decision to fire [him]." *Gorzynski*, 596 F.3d at 107.  In this respect it is important to consider whether the explanations that Marina Dodge gave for O'Reilly's firing were pretextual. *Id.*  We are mindful that the pretextual nature of an employer's explanations does not necessarily entitle a plaintiff to prevail.  *See Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000) (even after a jury "could conclude that defendants' stated reasons for firing plaintiff were pretextual," plaintiff must prove discrimination because of age); *accord Gorzynski*, 596 F.3d at 106-07.  Where, as here, the asserted nondiscriminatory explanations relate to and purport to justify allegedly age-related comments, a jury may consider the pretextual nature of the explanations in determining whether the comments are ageist and whether the adverse action would not have occurred but for the plaintiff's age.

### 1.     Performance

First, Marina Dodge stated in its summary judgment papers that O'Reilly was fired because a previous employee, 36-year old Clark Kaiser, "would be a better option."  However, Marina Dodge presented no contemporaneous evidence that O'Reilly's job performance was lacking.  O'Reilly never was told that his job performance was unsatisfactory, never was disciplined, never received a written or verbal warning, never was told he was not producing enough, and never was sent a termination letter detailing the reason he was fired.  Marina Dodge does not dispute these facts.  Marina Dodge's President, John Gabriele, can only explain that "[b]ecause Defendant Marina Dodge did not conduct performance evaluations of its employees during the years in question, [O'Reilly]'s deficiencies were not documented."  *Cf. Gorzynski*,

---

[1] For substantially the same reasons articulated by the district court, we affirm the district court's exclusion of Christian Stevenson's affidavit and do not rely on it in this summary order.

596 F.3d at 108-09 (finding that a reasonable jury could find for employee who brought ADEA suit and had received a negative performance evaluation and had been placed on probation).

In contrast to the lack of contemporaneous evidence of poor work performance, there is abundant evidence of O'Reilly's good work performance. One week after he was fired, O'Reilly's supervisor, Paul Lootens, wrote a glowing letter of recommendation, stating that "O'Reilly during his employment beginning in 1999 has performed with great excellent quality of customer satisfaction." Not one word in the letter is negative or lukewarm, and a jury could find that the letter contains the truth about O'Reilly's performance. If indeed O'Reilly was a poor worker, his supervisor could have declined to write the letter (it is his reputation at stake) or could have written less effusively. In addition, during his tenure O'Reilly received numerous cash bonuses for above-average sales performance. O'Reilly stated that he "received an awful lot of $100 bonuses and at least twelve $200 bonuses" and there is evidence that he did indeed receive some such bonuses. In addition, O'Reilly presented a March 20, 2006 "letter of commendation" that a customer wrote to the president of Marina Dodge, describing in detail the "outstanding customer service" that O'Reilly provided, for which the customer promised to "recommend Marina Dodge to family and friends."

## 2. Behavior

Second, Marina Dodge claimed that O'Reilly was fired for his "negative" and "lackadaisical" approach to his work. However, O'Reilly's supervisor affirmed that O'Reilly "performed satisfactorily enough despite his disorganization to continue to be employed for many years." Supervisor Lootens stated that "profitability expectations" became greater in 2006 and 2007, and that a more "organized" worker would be better, but Lootens does not explain why O'Reilly was able to meet the previous profitability goals but not the new goals. Indeed, there is no evidence that O'Reilly ever was disciplined for not bringing in enough work or for being disorganized, nor is there evidence that he was spoken to about these matters. A reasonable jury could find that these post hoc explanations were pretextual.

Indeed, Marina Dodge's claims about O'Reilly's "negative" approach to work must be contrasted with the undisputed negative comments to which O'Reilly was constantly subjected at work. O'Reilly stated that Marina Dodge employees (including President Gabriele): (1) asked O'Reilly – or his customers – if he forgot the customer's name; (2) asked if he could find his way home or needed to use GPS; (3) repeated O'Reilly's habit of saying "ha" (or "ah") in response to a question when he needed more time to think of an answer; and (4) called O'Reilly a "cone head." At his deposition, O'Reilly initially offered generous interpretations of such jokes, speculating that his fellow employees teased him because they were jealous of his "stable home life" and knew he could handle teasing because he was an older, more mature man. However, a reasonable jury could find it unimaginable that Marina Dodge employees found the jokes funny for those reasons – and so funny that they kept repeating them, even repeating them to customers of Marina Dodge, who immediately understood the jokes. A reasonable jury could find that the employees found the jokes funny because, as O'Reilly testified, the jokes "[were] implying [that] I have reached that level of dementia or Alzheimer's" and the level "where the brain isn't working." O'Reilly was ten or fifteen years older than everyone in the Service

-4-

Department and his fellow employees made fun of his memory (of names and directions), his speech tics, and the shape of his bald head. Although it may be a close factual call, a reasonable jury could find that the employees – including President Gabriele and Supervisor Lootens, who participated directly in the decision to fire O'Reilly – were relying on stereotypes of older people when they "teased" O'Reilly. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (spoken remarks to an employee are relevant evidence of age discrimination if their content indicates age animus and the speaker was primarily responsible for the adverse employment action).

### 3.  Resistance to New Initiatives

Third, Marina Dodge claimed that O'Reilly was fired because of his "failure and refusal to embrace new initiatives to increase profitability." However, O'Reilly presented evidence that he did not resist such initiatives. When Marina Dodge changed its bonus structure to encourage the Service Department to persuade customers they needed more (and more expensive) service to their cars, O'Reilly reached a number of the milestones and regularly received monthly bonuses for his achievements. A reasonable jury could discount an affidavit by Richard Crossley, an outside training instructor, that O'Reilly was not "attentive or respectful" in a training session – which O'Reilly denies – and could find that O'Reilly acted properly in answering "a ringing telephone" (possibly from a customer) that interrupted an unscheduled chat with Crossley.

In addition, O'Reilly stated that he created a new initiative of his own that increased Marina Dodge's productivity. In 2000, O'Reilly created a computer program to send postcards to customers, reminding them that their cars were scheduled for routine maintenance or NYS vehicle inspections. From 2000 to mid-2006 (when a new Director of Parts and Service was hired), O'Reilly used this program to increase Marina Dodge's business. Further, O'Reilly produced weekend schedules for the teams of technicians and service advisors because Supervisor Lootens "couldn't figure out how to break the guys down, where it wasn't overlapping."

Moreover, Marina Dodge's claim that O'Reilly resisted "new initiatives" while at Marina Dodge must be evaluated in light of the arguably ageist jokes O'Reilly suffered at Marina Dodge. A common stereotype of elderly people is that they resist change and new approaches. A reasonable jury could find that Marina Dodge's claim that O'Reilly resisted "new initiatives" was a pretext for Marina Dodge's desire for a younger employee to interact with customers and was based on Marina Dodge's unfounded assumption that a younger (36-year old) employee would better implement "new initiatives" than an older (almost-59-year old) employee. Although people above age 59 worked at Marina Dodge after O'Reilly was fired, none worked in the Service Department. A reasonable jury could find that Marina Dodge did not (and does not) believe that older people are unsuited for *all* work at Marina Dodge – but that Marina Dodge believed that such people are unsuited for high-pressure sales work in the Service Department, including convincing customers to pay for more (and more expensive) maintenance or repairs. Age discrimination is illegal, regardless of whether it is targeted at certain jobs.

Given the cumulative weight of this evidence, a reasonable jury could find that (1) Marina Dodge's explanations for firing O'Reilly were pretextual; and (2) O'Reilly's age was the "but for" reason he was fired. O'Reilly presented significant evidence that he enjoyed work and had a positive attitude, performed well at work, yet suffered arguably ageist jokes from Marina Dodge employees, including its president. A reasonable jury could find that but for his age, Marina Dodge would not have fired O'Reilly. Thus, the district court erred in granting summary judgment for Marina Dodge.

For the foregoing reasons, the district court's judgment is **VACATED** and the case is **REMANDED** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk