10-1516-cv
Bucalo v. Shelter Island Union Free Sch. Dist.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: May 17, 2012     Decided: August 10, 2012)

Docket No. 10-1516-cv

STEPHANIE BUCALO,

*Plaintiff-Appellant*,

— v. —

SHELTER ISLAND UNION FREE SCHOOL DISTRICT,

*Defendant-Appellee*.

B e f o r e:

WINTER, STRAUB, and LYNCH, *Circuit Judges*.

Plaintiff-appellant Stephanie Bucalo appeals from a judgment of the United States

District Court for the Eastern District of New York (Denis R. Hurley, *J*.) based on a jury

verdict in favor of defendant-appellee Shelter Island Union Free School District in her

action for age discrimination and retaliation.  The district court denied the plaintiff's

motion for judgment as a matter of law.  On appeal, plaintiff argues that because of the

death of the sole decision maker with direct knowledge regarding defendant's refusal to

hire her, and the failure to preserve his testimony, she is entitled to judgment as a matter of law under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

AFFIRMED.

_____

JASON BERNBACH, Bernbach Law Firm PLLC, White Plains, New York, *for Plaintiff-Appellant*.

DIANE K. FARRELL (Jeltje deJong, *on the brief*), Devitt Spellman Barrett, LLP, Smithtown, New York, *for Defendant-Appellee*.

_____

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant Stephanie Bucalo appeals from a judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*) based on a jury verdict in favor of defendant-appellee Shelter Island Union Free School District ("the District") in her action for age discrimination and retaliation. The district court denied Bucalo's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. On appeal, Bucalo argues that because of the death of the sole District employee with direct knowledge of the reasons she was not hired, and the District's failure to preserve his testimony, she is entitled to judgment as a matter of law under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). We disagree, and affirm the judgment of the district court.

2

## BACKGROUND

In July 1999, the District had an opening for a school librarian. Bucalo, who was then 42 years old, applied for the position and was interviewed by then-superintendent Gilbert DeCicco. Bucalo was not hired; the position went to William Hallman, a 35-year-old man. In November 1999, Bucalo filed a charge of age and sex discrimination against the District with the Equal Employment Opportunity Commission ("EEOC"), which granted her a right-to-sue letter. However, Bucalo did not file a lawsuit based upon that charge.

In 2003, Hallman left the school librarian position, and Bucalo, then 46 years old, reapplied for the job. She submitted her application, which included a cover letter, resume, letters of recommendation, and a copy of her state certification, to the District's then-superintendent, Kenneth Lanier, who had replaced DeCicco in 2001. Bucalo was one of twelve applicants for the position. Lanier selected four candidates for interviews; Bucalo was not one of them. It is undisputed that Lanier decided which candidates received interviews alone, without consulting any other employees of the District. The four finalists were interviewed by a committee, which included Lanier. The committee eventually selected 32-year-old Christina Chrabolowski for the position.

After filing another EEOC charge, Bucalo initiated the present lawsuit on July 27, 2004. Her complaint alleged that in failing to hire her the District discriminated against her based on her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and retaliated against her for her 1999 EEOC

3

complaint, in violation of both the ADEA and Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e et seq.[1]

Shortly before the lawsuit was filed, on June 30, 2004, Lanier left his employment

with the District because he was suffering from a life-threatening, debilitating disease.

Because of Lanier's rapidly declining health, the District noticed Lanier's deposition in

January 2005 in order to preserve his testimony for this lawsuit. However, in February

2005, two days before he was scheduled to be deposed, Lanier canceled the deposition,

advising the District that he was unable to testify without causing serious harm to his

health. On March 16, 2005, Lanier executed an affidavit in which he asserted that he had

not selected Bucalo for an interview because her history of working in numerous short-

term positions throughout her career evidenced a troubling "instability" and lack of

"staying power," denied that he had considered Bucalo's age or her 1999 EEOC charge in

rejecting her application, and praised the qualifications of the successful candidate,

Chrabolowski, noting her familiarity with various forms of technology, her experience

---

[1] Bucalo also asserted similar claims for age discrimination and retaliation under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. Because the parties focus their briefing exclusively on the federal claims brought under Title VII and the ADEA, and because any differences between the law governing the New York state claims and their federal counterparts are irrelevant to this case, our analysis in this opinion focuses solely on the federal claims. See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (noting that claims under the New York State Human Rights Law are, with certain exceptions, "analytically identical to claims brought under Title VII" (internal quotation marks omitted)); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105 n.6 (2d Cir. 2010) (noting that "[t]he law governing ADEA claims has been held to be identical to that governing claims" for age discrimination under the New York State Human Rights Law).

4

working with both elementary and junior high students, her positive evaluation from a prior supervisor, and her "excellent performance in her demonstration lesson held before the interview committee."[2]  Lanier died on August 7, 2005.

Thereafter, both sides filed summary judgment motions, which the district court denied on February 1, 2007.  Applying the familiar burden-shifting framework of McDonnell Douglas, the district court first determined that Bucalo had presented sufficient evidence to establish a prima facie case of age discrimination and retaliation. In so ruling, the court held that a reasonable jury could infer that the District discriminated against Bucalo based upon her age, noting that Chrabolowski was 32 when she was hired, while Bucalo was 46.  With respect to Bucalo's retaliation claim, the court noted the four-year gap between her 1999 EEOC charge and her unsuccessful 2003 application, and suggested that such a gap might in other circumstances undercut an inference that the complaint was causally related to her not receiving the job.  However, the court found that in this case such an inference was permissible because Bucalo had no employment-related contact with the District between 1999 and 2003, such that the District's failure to hire her was its first opportunity to take an adverse employment action against her after her EEOC charge.

The district court then turned to whether the District could meet its burden, under the second step of the McDonnell Douglas framework, of articulating a legitimate,

_____

[2] On June 21, 2005, Lanier signed a supplemental affidavit indicating that he was in the final stages of his illness and reaffirming the statements in his prior affidavit.

nondiscriminatory reason for its refusal to hire Bucalo. Bucalo had argued that the District was unable to meet its burden because Lanier, the sole person to decide not to grant Bucalo an interview in 2003, was now deceased, and because his affidavits were inadmissible hearsay. Because the District could not meet its burden, Bucalo argued, she was entitled to judgment as a matter of law.

The district court held that even if the District could not meet its burden of production, the "jury [was] not required to find for Plaintiff simply because Plaintiff's proof is adequate to establish a prima facie case." The court suggested that the jury might not believe, for example, that Lanier declined to interview Bucalo because of her prior EEOC complaint given the four-year gap in time, and might also question whether Lanier believed he was selecting only young candidates when he reviewed the applications for the librarian position. In light of this holding, the court declined to determine whether the Lanier affidavits were admissible, and whether the District could otherwise satisfy its burden by submitting circumstantial evidence regarding Lanier's motives. Bucalo moved for reconsideration of the court's summary judgment ruling, and the district court denied her motion, again emphasizing that Bucalo's establishment of her prima facie case did not entitle her to judgment as a matter of law.

As the trial approached, the parties continued to skirmish over the evidentiary consequences of Lanier's death. First, the District moved in limine to admit the Lanier affidavits as evidence. Bucalo opposed the motion, and the district court ruled that the affidavits were inadmissible hearsay and could not be used at trial. Bucalo then moved in

6

limine to bar the District from using the resumes of the candidates for the librarian position as circumstantial evidence regarding Lanier's motives, arguing that there was no witness who could testify that Lanier actually relied upon the information in the resumes when he decided whom to interview. The district court denied that motion, ruling that the resumes were admissible as business records and could be offered as circumstantial evidence of the information that was before Lanier when he made his decision.

The trial began on March 15, 2010, and continued for four days. Much of Bucalo's testimony during her direct case concerned her turbulent employment history. She admitted during cross-examination that the resume she submitted to the District in 2003 indicated that she had worked in twelve different education or librarian jobs in the ten-year period prior to her application to the District. Several of those positions were part time – for example, Bucalo worked as a part-time children's librarian at a public library in 1992, and as a part-time reference librarian at other libraries in 1997 and from 1999 to 2000. Bucalo also worked as a student teacher from 1992 to 1993 and again in 2002, as a substitute school librarian in 1993, and as a substitute teacher from 2001 to 2002. She acknowledged that her resume indicated that the position she had held for the longest period was as a real estate agent from 1993 to 1996. Bucalo was also cross-examined about the letters of recommendation she submitted with her application to the District in 2003. All three of these letters dated from March 2002, which was just over a year before Bucalo applied to the District, and two of them concerned employment that took place at least five years prior to her application.

At the close of Bucalo's case, the District moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), arguing that Bucalo had failed to prove the fourth element of her prima facie case of age discrimination and retaliation.[3] With respect to the age discrimination claim, the District argued that there was insufficient evidence that Lanier knew there was a substantial discrepancy between the ages of Bucalo and Chrabolowski, because Lanier had never met either candidate and it was a reasonable inference from their resumes, which did not state their ages, that they both were in their early 30s. The District further argued that while Lanier had reviewed Bucalo's EEOC complaint – which did list her date of birth – when he reviewed the District's legal files when he was hired in 2001, it would be speculative to infer that he remembered Bucalo's age when he rejected her application two years later. The district court rejected this argument, holding that Bucalo satisfied her minimal burden of establishing a prima facie case and that whether Lanier in fact remembered Bucalo's age was a question for the jury, which could reasonably decide the question either way.

With respect to the retaliation claim, the District's Rule 50(a) motion renewed its previously rejected argument that there was insufficient temporal proximity between Bucalo's 1999 EEOC charge, which was based on then-Superintendent DeCicco's failure

_____

[3] The fourth element of a prima facie case of age discrimination requires a plaintiff to show that the adverse employment action "occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 107. Similarly, the fourth element of a prima facie case of retaliation requires a showing of "a causal connection between the protected activity and the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks omitted).

8

to hire her, and Lanier's failure to hire her in 2003. The district court again rejected this argument, holding that there was enough evidence for the jury to conclude that Bucalo "was denied an interview because the last time when [the District] went through this process and she was granted an interview . . . she filed a complaint with the EEOC" after not receiving the position. Accordingly, the court found that Bucalo had established a prima facie case of retaliation and that the claim should go to the jury.

On its direct case, the District called Deborah Vecchio, who, as the District's clerk, was responsible for advertising the open librarian position in 2003 and for maintaining a file of past applications for employment with the district. Vecchio testified that she kept the applications submitted for the librarian position in her files after Lanier was finished reviewing them. In addition, Hallman, who held the librarian position before Chrabolowski, testified that he spent approximately 60 percent of his time as a librarian teaching students. The District also questioned Chrabolowski, the successful applicant for the 2003 position, who testified that she had taught continuously at a Catholic elementary school for six years, had received a master's degree in library science, and had completed a librarian internship as part of her master's program.[4]

After the District rested, Bucalo made her own Rule 50(a) motion, once again arguing that the District had failed to meet its burden under the second step of McDonnell

---

[4] Chrabolowski was called by Bucalo during her direct case, and cross-examined by the District. For convenience, the district court then permitted the District to obtain direct testimony from Chrabolowski as if she had been called as part of its case.

Douglas of articulating a legitimate, nondiscriminatory reason for not hiring Bucalo because of the absence of any testimony by Lanier about his motives. The District opposed the motion, arguing that, like Bucalo, it was allowed to rely upon circumstantial evidence, and that Bucalo's resume constituted circumstantial evidence suggesting that Bucalo lacked the ability to hold a job for an extended period of time. The District also emphasized Hallman's testimony that the librarian position involved significant teaching responsibilities, and noted that Chrabolowski's resume indicated that she had six years of teaching experience, while Bucalo's teaching experience was significantly more limited. The district court then denied Bucalo's Rule 50(a) motion, relying on its earlier decision that the District could use circumstantial evidence to satisfy its burden of production.

The parties then delivered their summations. In its summation, the District challenged Bucalo's age discrimination claim by arguing that Lanier was unlikely to have known Bucalo's age, since he had never met Bucalo, was unlikely to remember her age from reviewing the district's legal files two years earlier, and could have thought that Bucalo and Chrabolowski were the same age given their resumes. With respect to Bucalo's retaliation claim, the District argued that it was unlikely that Lanier's refusal to hire her was motivated by retaliatory animus, given the four year gap of time between her 1999 EEOC charge and her 2003 application and the fact that Lanier, who had no involvement in the 1999 incident, arguably lacked any personal animus arising from Bucalo's charge. In addition, the District argued that Bucalo's history of numerous short-term jobs and her "stale" reference letters would have been a "red flag" to Lanier. The

10

District noted that Chrabolowski, by contrast, had worked continuously as an elementary school teacher for six years, had just recently received her master's degree in library science, and had provided more recent references. During her summation, Bucalo challenged the District's various arguments, emphasizing that Lanier had not testified during the trial as to his reasons for not interviewing Bucalo and arguing that Bucalo was the most qualified applicant for the library position.

The case was then submitted to the jury, which returned a verdict in favor of the District on all counts. Bucalo then filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule Civil Procedure 59. The district court denied these motions. See Bucalo v. Shelter Island Union Free Sch. Dist., 778 F. Supp. 2d 271 (E.D.N.Y. 2011). The court held that, under the McDonnell Douglas burden-shifting framework, a "rebuttable presumption does not materialize until the trier of fact – in Bucalo's case, the jury – is convinced that plaintiff has proven her prima facie claims by a preponderance of the evidence." Id. at 279. Accordingly, even if the District failed at trial to articulate a legitimate, nondiscriminatory reason for its refusal to hire Bucalo, Bucalo's case was still properly submitted to the jury. In the alternative, the court also held that when, as in this case, the relevant decision maker is unavailable to testify, the defendant is entitled to rely on circumstantial evidence regarding the decision maker's reasons for his employment decision. Id. at 281-82. The court noted that the resumes of Bucalo and the other applicants were properly admitted into evidence, and held that it was not improper "for

11

defense counsel to underscore the patent differences she perceived among the resumes during her summation even if some of those differences were apparently also noted by Lanier and, presumably, later by the jury based on their verdict." Id. at 282.

## DISCUSSION

I.     Standard of Review

A district court may set aside a jury's verdict "pursuant to Rule 50 only where there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.'" AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (quoting Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005)). "Although we review the district court's denial of a Rule 50 motion *de novo*, we are bound by the same stern standards." Cross, 417 F.3d at 248. In reviewing such a motion, we "must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation marks omitted).

In addition, we review for abuse of discretion a district court's denial of a motion for a new trial pursuant to Rule 59, Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella, 350 F.3d 73, 80 (2d Cir. 2003), and a decision to admit or exclude evidence, Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

12

II.    McDonnell Douglas Framework

Bucalo argues on appeal that she should be granted judgment as a matter of law because she "conclusively established her prima facie cases, and [the District] failed to rebut those prima facie cases by articulating through admissible evidence a nondiscriminatory reason for her rejection, under McDonnell Douglas."  Appellant's Br. at 28.  We reject Bucalo's argument for two reasons.  First, we agree with the district court that a question of fact for the jury existed as to whether Bucalo had proven the elements of her prima facie cases for age discrimination and retaliation.  Second, we also affirm the district court's alternative ruling that, because the relevant decision maker was unavailable, the District was entitled to rely on circumstantial evidence regarding Lanier's motives for not hiring Bucalo.[5]

A.    Bucalo's Prima Facie Case

The Supreme Court's decision in McDonnell Douglas "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  The purpose of the McDonnell Douglas burden-shifting framework is to "progressively . . . sharpen the inquiry into the elusive factual question of intentional discrimination."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.8 (1981).

---

[5] Bucalo's brief on appeal focuses almost exclusively upon her argument that she is entitled to judgment as a matter of law.  To the extent she also argues that she is entitled to a new trial, we hold, for the same reasons set forth in this section, that the district court's refusal to grant her a new trial was not an abuse of discretion.

13

At the first stage, the plaintiff bears the burden of establishing a "prima facie" case. Burdine, 450 U.S. at 252-53. The requirements to establish a prima facie case are "minimal," Hicks, 509 U.S. at 506, and a plaintiff's burden is therefore "not onerous," Burdine, 450 U.S. at 253. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Id. at 254. At the second McDonnell Douglas stage, the presumption created by the prima facie case "places upon the defendant the burden of producing an explanation to rebut the prima facie case – i.e., the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" Hicks, 509 U.S. at 506-07 (quoting Burdine, 450 U.S. at 254). However, while the presumption "shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. at 507 (quoting Burdine, 450 U.S. at 253). If the defendant satisfies its burden of production, then "the presumption raised by the prima facie case is rebutted and drops from the case." Id. (internal quotation marks and citation omitted). At the final stage, the plaintiff then has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision" – a burden that "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Burdine, 450 U.S. at 256; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000) (noting that after the presumption is rebutted the "sole remaining issue [is] discrimination *vel non*" (internal quotation marks omitted)).

14

This framework, which was developed in the context of claims for discrimination under Title VII, applies to claims of age discrimination under the ADEA and to claims of retaliation under Title VII and the ADEA.  See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107, 110 (2d Cir. 2010).  To establish a prima facie case, a plaintiff with an age discrimination claim must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  Id. at 107.  To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks omitted).  The same standards apply to claims of retaliation under the ADEA.  See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).

Bucalo argues at length that she "conclusively established" her prima facie cases of age discrimination and retaliation, and was therefore entitled to judgment as a matter of law because the District failed to rebut her prima facie case.  Appellant's Br. at 28.  We disagree.  At the outset, it is important to be clear about the consequences of a defendant's failure to satisfy its burden of production at trial under the second step of McDonnell Douglas.  As the Supreme Court noted in Hicks, "if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case,

15

and (2) the defendant has failed to meet its burden of production," then the "court must award judgment to the plaintiff as a matter of law" under Rule 50(a).  509 U.S. at 509.  However, "[i]f the defendant has failed to sustain its burden but reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer."  Id. at 509-10.

Accordingly, as we and other circuits have recognized, "*disputed* elements of a prima facie case must be submitted to a jury" even if the defendant fails to carry its burden of production.  Hester v. BIC Corp., 225 F.3d 178, 186 (2d Cir. 2000); see also Cabrera v. Jakabovitz, 24 F.3d 372, 381 (2d Cir. 1994) (discussing appropriate jury instructions in the event "the facts of the *prima facie* case are disputed and the defendant has produced no rebuttal evidence"); Cicero v. Borg-Warner Automotive, Inc., 280 F.3d 579, 587 (6th Cir. 2002) ("If the parties dispute the facts establishing the prima facie case . . . a question of fact remains for the fact finder to decide."); Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1283 (10th Cir. 1999) ("[E]ven if Defendants had failed to meet their burden of production, Plaintiff's facts in this case were contested and reasonable minds could differ as to whether he established a prima facie case by a preponderance of the evidence."); Sisk v. Picture People, Inc., 669 F.3d 896, 899-900 (8th Cir. 2012) (similar).[6]

---

[6] At the same time, "juries should not be charged on the McDonnell Douglas burden-shifting framework."  Sharkey v. Lasmo (AUL Ltd.), 214 F.3d 371, 374 (2d Cir. 2000); see also Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998) ("Courts – not juries – should determine whether the initial McDonnell Douglas burdens

16

The question, then, is whether the district court correctly determined that there was a genuine factual dispute for the jury to resolve regarding plaintiff's prima facie showing of age discrimination and retaliation. We believe that it did. The District contested at trial whether Bucalo had satisfied the fourth element of a prima facie case for both her age discrimination and retaliation claims. With respect to age discrimination, to prove the fourth element of her prima facie case Bucalo was required to show that Lanier's refusal to hire her "occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 107. As we noted in Woodman v. WWOR-TV, Inc., in the context of summary judgment "an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of discriminatory intent." 411 F.3d 69, 90 (2d Cir. 2005).

In this case, there was some evidence in the record that Lanier was aware of such a discrepancy: The District stipulated that Lanier had reviewed the District's legal files when he was hired in 2001, and those files contained Bucalo's EEOC complaint, which listed her date of birth. As the district court recognized, this evidence, when coupled with Chrabolowski's resume, which suggested that she was in her early 30s, was sufficient for Bucalo to create an issue of fact for the jury as to the fourth element of her prima facie

of production have been met."). In keeping with our precedents, the jury in this case was not charged on the McDonnell Douglas framework. Instead, the jury was asked to determine whether plaintiff had met her ultimate burden of proving age discrimination or retaliation.

17

case, and to defeat the District's motions for summary judgment and for judgment as a matter of law at trial.

However, that does not necessarily mean that Bucalo proved by a preponderance of the evidence that Lanier's refusal to hire Bucalo "occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 107. The District was still entitled to present facts to the jury calling that inference into question, and it did so by noting that Lanier had never met Bucalo, had reviewed her application two years after initially reading the District's legal files, and could have thought that Bucalo and Chrabolowski were the same age since their resumes both suggested that they were in their early 30s. In these circumstances, we believe that "reasonable minds could differ as to whether a preponderance of the evidence establishe[d]" that Lanier knew or remembered Bucalo's age at the time he rejected her application and was therefore aware of a significant age discrepancy between Bucalo and Chrabolowski. Hicks, 509 U.S. at 509 (emphasis omitted). Thus, this element of plaintiff's prima facie case was disputed, and was properly submitted to the jury.[7]

The fourth element of Bucalo's prima facie case for retaliation was also at the very least disputed. That element requires a plaintiff to show "a causal connection between the

_____

[7] Contrary to Bucalo's argument on appeal, see Appellant's Br. at 33-34, the district court's refusal to give a special jury instruction regarding Woodman does not alter this analysis. While such an instruction may have been permissible – a question we do not reach – the issue of Lanier's lack of knowledge of Bucalo's age was argued to the jury, and the jury could hardly have found that Lanier intentionally discriminated against Bucalo on the basis of her age if it believed he did not know her age.

18

protected activity and the adverse employment action." Jute, 420 F.3d at 173 (internal quotation marks omitted). Such a causal connection can be established indirectly "'by showing that the protected activity was closely followed in time by the adverse employment action.'" Gorzynski, 596 F.3d at 110 (quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001)). While we have not drawn "a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" between a protected activity and an allegedly retaliatory action, courts in this circuit have typically measured that gap as a matter of months, not years. Gorman-Bakos, 252 F.3d at 554-55 & n.5 (collecting cases); see also Gorzynski, 596 F.3d at 110 (noting that "we have previously held that five months is not too long to find the causal relationship").

In this case, the district court reasoned that the four year gap in this case did not preclude a causal inference because Bucalo was not employed by the District for that entire period, and the District took an adverse employment action against her on its first opportunity to do so. Even if the district court was correct that this evidence was sufficient to permit Bucalo to present her retaliation claim to the jury – an issue we do not reach – Bucalo's evidence was not so strong that "any rational person would have to find" that it demonstrated a causal connection between Bucalo's EEOC complaint and Lanier's decision by a preponderance of the evidence. Hicks, 509 U.S. at 509. The District was still entitled to – and did – argue to the jury that there was no causal connection by noting the long gap of time and that Lanier was not involved in Bucalo's rejection in 1999.

19

Accordingly, this element of Bucalo's case was also disputed and properly submitted to the jury for determination.

Because elements of Bucalo's prima facie case for both age discrimination and retaliation were disputed, Bucalo was not entitled to judgment as a matter of law even if the District was unable, by virtue of Lanier's death, to satisfy its burden under the second stage of McDonnell Douglas.

B. The District's Burden of Production

Even if Bucalo were correct that "any rational person would have to find the existence of facts constituting" her prima facie cases for age discrimination and retaliation, Hicks, 509 U.S. at 509, she would still not be entitled to judgment as a matter of law because the District satisfied its burden of production under the second step of the McDonnell Douglas framework.

As noted above, a plaintiff's demonstration of her prima facie case shifts the burden of production to the defendant, who must "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 254). Both the Supreme Court and our Court have emphasized that, in typical discrimination and retaliation cases, the defendant must articulate its legitimate, nondiscriminatory reason with some specificity. Thus, the Supreme Court has held that to satisfy its burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Burdine, 450 U.S. at 255; see also id. at 255 n.9 ("An articulation not admitted into

20

evidence will not suffice."). Likewise, we have held that "[a]n employer's explanation of its legitimate nondiscriminatory reasons must be 'clear and specific.'" Mandell v. County of Suffolk, 316 F.3d 368, 381 (2d Cir. 2003) (quoting Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985)); see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000).

In the ordinary discrimination or retaliation case, this requirement of specificity serves "to meet the plaintiff's prima facie case by presenting a legitimate reason for the [defendant's] action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 255-56. However, in rare cases, such as this one, an employer will be unable, through no fault of its own, to articulate clearly and specifically its legitimate reasons for an adverse employment action.[8] In this case, Lanier was the sole District employee who played any role in selecting the four candidates who received interviews for the librarian position. Because of his debilitating illness, which began prior to the initiation of this lawsuit in 2004 and took his life in 2005, the parties were unable to preserve his testimony in admissible form. Accordingly, throughout this litigation, the District's ability to articulate its reasons for not hiring Bucalo has been severely compromised.

---

[8] We note that none of the Supreme Court's decisions applying the McDonnell Douglas framework, including Burdine, have involved circumstances similar to those in the present case, in which the defendant was hampered in its ability to articulate a nondiscriminatory reason for its hiring decision because of the death or unavailability of the relevant decision maker.

21

With such situations in mind, we have suggested that a defendant's failure to "come[] forward with a non-discriminatory reason" does not compel a jury verdict for the plaintiff if the defendant "furnishes a satisfactory explanation for its inability to tell the reason why plaintiff was disfavored." Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), abrogated on other grounds by Reeves, 530 U.S. 133. We can think of few explanations for a defendant's inability to articulate its reasons more compelling than the one in this case – the extremely poor health, and eventual death, of the sole decision maker with direct knowledge regarding the employment decision at issue.

We have not had occasion since Fisher to discuss what sort of evidence a defendant may rely upon to prove a decision maker's reasons where clear and specific evidence of those reasons is unavailable. We believe that the district court did not err by permitting the District to rely upon circumstantial evidence – i.e., Bucalo's resume and the resumes of the other applicants, which were properly admitted as business records – to prove Lanier's legitimate, non-discriminatory reasons for not hiring Bucalo. To hold otherwise under the unusual circumstances of this case would be to adhere to an excessively inflexible version of the McDonnell Douglas framework. See Hicks, 509 U.S. at 519 (cautioning that "[t]he McDonnell Douglas methodology was never intended to be rigid, mechanized, or ritualistic" (internal quotation marks omitted)).[9]

Further, we believe that in the context of this case the resumes were sufficient to

---

[9] Accordingly, the district court did not abuse its discretion by denying Bucalo's motion in limine to preclude the use of the resumes as circumstantial evidence.

22

meet the defendant's burden of production. As the district court noted, "the resumes speak for themselves," <u>Bucalo</u>, 778 F. Supp. 2d at 282, and a reasonable juror could infer from Bucalo's resume that Lanier did not select her for an interview in light of her unstable career as an educator, librarian, and one-time real estate agent. Likewise, we agree with the district court that it was not improper "for defense counsel to underscore the patent differences she perceived among the resumes during her summation even if some of those differences" echoed the reasons Lanier presented in his hearsay affidavit. <u>Id</u>.[10]

As the Supreme Court has repeatedly made clear, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 254; <u>see also</u> <u>Hicks</u>, 509 U.S. at 507 (same). Bucalo attempted to shoulder that burden and failed, with a case that, while sufficient to call for trial, was strikingly devoid of direct evidence of discriminatory or retaliatory intent, and relied on weak inferences from the bare facts of age disparity and possible knowledge on the part of the decision maker of her prior charge of discrimination. The jury was entitled to examine the resumes of the candidates to make its own determination of whether they suggested that legitimate or invidious

---

[10] Thus, Bucalo's argument that the District's summation "turned to the suppressed Lanier affidavits and spirited through the back door what the District Court had blocked at the front," Appellant's Br. at 27, is incorrect. The summation made no reference to Lanier's death, or to his affidavit, and did not insinuate that counsel for the District had extra-record access to Lanier's own account of his reasons. Counsel argued only that the reasons could be inferred from the resumes, as she was entitled to do.

motives more likely explained the hiring decision.  Bucalo may not take advantage of Lanier's unavailability to claim an automatic victory in a case that the jury found unpersuasive.

## CONCLUSION

We have considered all of Bucalo's other arguments, and find them to be without merit.  For the foregoing reasons, the judgment of the district court is AFFIRMED.