24-2325-cv
*Tillman v. Grenadier Realty Corp.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of October, two thousand twenty-five.

PRESENT:
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> *Circuit Judges.*

---

BARBARA TILLMAN,

> *Plaintiff-Appellant*,

v.                                                                24-2325-cv

GRENADIER REALTY CORP., GRC MANAGEMENT,

> *Defendants-Appellees*.

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | EMILY G. BASS (Anne L. Clark, *on the brief*), Vladeck, Raskin & Clark, P.C., New York, New York. |
| FOR DEFENDANTS-APPELLEES: | PAUL H. GALLIGAN (Ashley N. Casey, *on the brief*), Seyfarth Shaw LLP, New York, New York. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on August 13, 2024, is **AFFIRMED**.

Plaintiff-Appellant Barbara Tillman appeals from the district court's judgment, granting summary judgment in favor of Defendants-Appellees Grenadier Realty Corporation and GRC Management (collectively, "Grenadier" or the "Company"), as to her age discrimination claim brought pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA"), and declining to exercise supplemental jurisdiction over her claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq*.  From 1976 until March 2020, Tillman was employed by Grenadier, a property management company, where she held several roles related to energy conservation—the most recent being Director of Energy Services.  Tillman alleges that Grenadier "fired [her] because of her age after 40 years of excellent performance."  Appellant's Br. at 1.

The district court granted Grenadier's summary judgment motion on Tillman's ADEA claim, determining that she "ha[d] not established that a reasonable factfinder could conclude that the circumstances surrounding her termination create an inference of age-based discrimination." *Tillman v. Grenadier Realty Corp.*, No. 21-cv-4827 (KAM) (MMH), 2024 WL 3758803, at *11 (E.D.N.Y. Aug. 12, 2024).  Moreover, the district court concluded that "[Tillman] provide[d] no evidence to refute Defendants' evidence of Grenadier's financial distress and the resulting need for layoffs, reorganization, and cost-cutting beyond generalized and unsupported attacks on witness credibility," and "the record is completely devoid of any evidence suggesting that age

2

discrimination was the real, but[-]for reason behind Grenadier's decision" to terminate Tillman. *Id.* at \*14.  Having granted summary judgment on the federal claim, the district court declined to exercise supplemental jurisdiction over the state and city claims.  *Id*. at \*15–16.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review a district court's grant of summary judgment *de novo*."  *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks and citation omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."  *Garcia*, 706 F.3d at 127.

Age discrimination claims brought pursuant to the ADEA are analyzed under the three-part, burden-shifting framework for Title VII discriminatory-treatment cases set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  "At the first stage, the plaintiff bears the burden of establishing a 'prima facie' case" by showing "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  *Id.* at 128–29 (internal quotation marks and citation omitted).  If the plaintiff establishes a prima facie case, the second stage then "places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason."  *Id*. (internal quotation marks and citation omitted).  If the defendant satisfies that burden of

3

production, at the final stage, the burden returns to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision—a burden that merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id*. at 129 (internal quotation marks and citation omitted). In doing so, the "plaintiff must prove that age was the but-for cause of the employer's adverse decision." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (internal quotation marks and citation omitted).

On appeal, Tillman argues that the district court improperly granted summary judgment on her ADEA claim by determining that she failed to establish a prima facie case of age discrimination or, in the alternative, to rebut the legitimate, non-discriminatory explanation proffered by Grenadier. In particular, she asserts that the inference of discriminatory intent as to her termination is supported by the disparate treatment she suffered leading up to that termination, as well as other evidence in the record purportedly demonstrating age discrimination with respect to other employees. We conclude that, even assuming that Tillman established a prima facie case, the district court correctly held, in the alternative, that no rational jury could find that Grenadier's proffered reason for her termination—namely, that the Company faced significant financial hardship, resulting in a complete reconstructing that included terminating Tillman's position— was pretextual and that age discrimination was the but-for cause for her termination.

As the district court explained in its thorough and well-reasoned decision, there was substantial, uncontroverted evidence that Tillman's firing was the result of the termination of Grenadier's largest and most profitable contract—rental operations at Starrett City, a housing development in Brooklyn, New York. Tillman served as Grenadier's Senior Vice President for Energy and Special Projects. Tillman performed substantial work for both Grenadier and Starrett City, and those two entities contributed equally to her salary from the 1970s until February 2019.

4

Because the Starrett City contract had accounted for more than one-third of Grenadier's revenue, the loss of the contract dealt a significant financial blow to the company. In response, Grenadier implemented a range of cost-cutting measures, including reducing severance packages, lowering vacation benefits, and transitioning to less expensive health insurance plans. The Company also underwent an internal restructuring process that led to several rounds of layoffs.

Notably, around March 2019, as layoffs were beginning, Tillman met with several members of Grenadier's Board of Directors. During this meeting, she was informed that the Company intended to retain her position despite the organizational restructuring, given the potential for her to contribute to other energy projects. Tillman agreed to remain with the Company, and Grenadier assumed full responsibility for her salary going forward.

As part of Grenadier's broader effort to reevaluate and streamline its operations in the wake of the Starrett City contract loss, the Company retained a consulting firm, Javelin Residential ("Javelin"), founded by Ryan Moorehead, to evaluate its operations. In its initial review, Javelin recommended a comprehensive restructuring of the Special Projects Department, which was overseen at that time by Tillman. Grenadier adopted the recommendation that Tillman's title change from Senior Vice President for Energy and Special Projects to Director of Energy Services, and that she be assigned to the Construction and Technical Services Department, with Pat LoRusso serving as the department's head.

The restructuring continued to unfold in the months that followed. In particular, in or around December 2019, Grenadier and Javelin formally engaged Ryan Moorehead as Grenadier's new Chief Executive Officer and President. Following his onboarding, as Grenadier continued to explore further cost-saving measures, including outsourcing, Moorehead formally proposed to the Grenadier Board that Tillman's position either be converted into a consultancy or outsourced to a

third-party provider. In the discussions that followed between Moorehead and Tillman, Tillman requested a written offer for a consultancy agreement, which Moorehead provided in February 2020. The proposed consultancy agreement offered Tillman a monthly retainer of $3,300 to oversee and monitor seven properties in an energy consulting capacity. Tillman rejected the offer, citing a substantial drop in compensation, and declined to pursue further negotiations. Moorehead subsequently recommended Tillman's termination to the Board of Directors, and Grenadier formally ended Tillman's employment in March 2020. Following her departure, Grenadier outsourced Tillman's former responsibilities to third-party consultants, who were compensated through commissions tied to their energy purchase contracts, rather than being paid directly by Grenadier.

In her attempt to controvert the substantial evidence supporting Grenadier's non-discriminatory motive underlying her termination, Tillman points to several pieces of evidence in the record that, even when considered collectively, do not provide a sufficient basis for a rational jury to find that the articulated reason for her termination was a pretext for age discrimination. For example, Tillman relies on a stray remark by Moorehead in 2019 when he allegedly "asked [her] how much longer [she] planned to work." App'x at 947. However, we have consistently held that discussions between supervisors and subordinates about retirement are common in the workplace and do not, by themselves, provide an inference of discriminatory intent. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("The ADEA does not make all discussion of age taboo. Nor does the fact that [a plaintiff's] eligibility for early retirement came up in a conversation . . . support an inference that age played a role [in the alleged adverse employment action]."); *accord Bernstein v. N.Y.C. Dep't of Educ.*, No. 21-2670, 2022 WL 1739609, at *2 (2d Cir. May 31, 2022) (summary order) (holding that, without more, questions concerning an employee's retirement plans "do not

6

raise an inference of age discrimination because they are legitimate questions an employer could ask an employee."). Similarly, Tillman's reliance on Moorehead's question about her ability to commute to work on a daily basis, instead of working remotely, is equally unavailing as it raises no inference of age discrimination.

Tillman also contends that the district court failed to properly consider evidence of disparate treatment leading up to her termination, including "evidence that Moorehead demoted Tillman by placing her under LoRusso, who was much younger than her and had a lower title, in a department that did not 'make sense.'" Appellant's Br. at 25. We disagree. Tillman's speculation about the motive for Grenadier's restructuring decision did not undermine the uncontroverted evidence that the reassignment was prompted by the cost-cutting measures arising from Javelin's review of the Company's operations. Indeed, Tillman acknowledged that economic motivation, noting that that LoRusso was not "making . . . as much money as [she] was," and as a result, by restructuring her position to fall underneath LoRusso's department, Grenadier may have "got[ten] a better deal." App'x at 1259; *see Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997) (per curiam) ("[A]n employer's concern about the economic consequences of employment decisions does not constitute age discrimination under the ADEA, even though there may be a correlation with age."). Furthermore, the fact that Tillman was given a cubicle for her new position, rather than an enclosed office, raises no inference of age discrimination where, as the district court observed, there was uncontroverted evidence that "[f]ollowing the loss of the Starrett City contract, Grenadier was required to vacate its office space on the Starrett City property and move to a one floor space in Industry City that largely consist[ed] of open office space with only eleven enclosed offices" and several other director-level individuals also did not receive an

enclosed office in the new space.[1] *Tillman*, 2024 WL 3758803, at \*8 (internal quotation marks and citation omitted).

In addition, although Tillman attempted to provide statistical information that purportedly showed that Grenadier had a pattern of terminating older employees, those statistics did not actually show that Grenadier disproportionately terminated older rather than similarly situated younger employees. Moreover, any possible inference that age played a role in Grenadier's termination of the former CEO in April 2019 does not create an issue of fact as to the motivation for *Tillman's* termination months later so as to preclude summary judgment, especially in light of the uncontroverted evidence regarding the reasons for Tillman's termination.

Finally, to the extent Tillman argues that the district court erred because it "rel[ied] entirely on the testimony" of "interested" witnesses claiming that "finances were the reason for Tillman's firing," we find that argument similarly unavailing. Appellant's Br. at 43. To be sure, it is well-established that "a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) (internal quotation marks and citation omitted). However, a plaintiff's "[b]road, conclusory attacks on the credibility of a witness" are, by themselves, insufficient to defeat summary judgment. *Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *accord McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that "[the plaintiff] cannot defeat summary judgment on a retaliation claim merely by impugning [Defendant's witness'] honesty"); *see also Chiaramonte v. Animal Med.*

---

[1] We likewise discern no error in the district court's determination that the reassignment of Tillman's work subsequent to her termination did not raise any inference of age discrimination. As the district court correctly noted, her duties were not reassigned to a newly hired employee, but rather "[her] work was almost entirely shifted to third-party consultants, with two of her previous coworkers assuming some responsibility for supervising the performance of those consultants." *Tillman*, 2024 WL 3758803, at \*10.

8

*Ctr.*, 677 F. App'x 689, 693 (2d Cir. 2017) (summary order) ("That an 'interested witness' has testified regarding a certain issue . . . does not in and of itself raise a genuine issue of material fact."). Here, contrary to Tillman's contention, the interested witness testimony regarding the economic reasons that prompted Tillman's termination is substantially corroborated by contemporaneous documentation contained in the record. Tillman failed to offer any evidence that undermines the credibility of these interested witnesses or the extensive documentation supporting their testimony, such as conflicting sworn testimony or documents, or strong evidence of discriminatory motive that calls into question those witnesses' credibility. *See Sista v. CDC Ixis North America,* 445 F.3d 161, 173 (2d. Cir. 2006) (explaining that pretext can be shown "either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more") (internal quotation marks omitted). In sum, even construing the evidence most favorably to Tillman, she has failed to produce sufficient evidence from which a rational jury could find that Grenadier's nondiscriminatory reason for her termination was pretextual and that age discrimination was the but-for cause of that adverse action. Therefore, the district court properly granted summary judgment in Grenadier's favor on her ADEA claim.[2]

---

[2] Although Tillman also challenges the district court's decision to decline to exercise supplemental jurisdiction over her state and city law claims, she notes that "[she] is not asking the Court to reinstate [her] state and city law claims independent from her federal claims; she argues, rather that, because the [d]istrict [c]ourt's order concerning her federal claims was erroneous, it must reinstate her federal, state, and local claims." Appellant's Reply, at 27 n.20. However, because we conclude that the district court properly granted summary judgment on her only federal claim, there is no basis to disturb its decision to decline to exercise supplemental jurisdiction over her remaining state and city claims. *See Pension Ben. Guar. Corp. ex. rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).

\* \* \*

We have considered Tillman's remaining arguments on appeal and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court