Rosemary B. HENDRY, Plaintiff,

v.

Patrick DONAHOE, Postmaster General, United States Postal Service, Defendant.

No. 10–CV–5917 WFK LB.

United States District Court, E.D. New York.

March 19, 2013.

Rosemary B. Hendry New York, NY, pro se.

Scott R. Landau, United States Attorneys Office, Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

WILLIAM F. KUNTZ II, District Judge.

■ Rosemary Hendry ("Plaintiff") brings this action against her former employer, the United States Postal Service ("USPS") ("Defendant"), by its postmaster general Patrick Donahoe,[1] alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112.[2] Compl. at 1.

1. This case was initially commenced against former Postmaster General John E. Potter. On October 25, 2010, Patrick Donahoe became the new Postmaster General. Def.'s Mot. for Summ. J., at 1 n.1. Pursuant to the Federal Rules of Civil Procedure, Patrick Donahoe was automatically substituted as the named party in this case. See Fed.R.Civ.P. 25(d).

2. Because claims by federal employees claiming discrimination on the basis of disability are covered by Section 501 of the Rehabilitation Act, and not the ADA, see 29 U.S.C. § 791(g), this Court will treat Plaintiff's ADA claim as a claim under the Rehabilitation Act. See Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir.1998) (a federal employee's "sole claim for discrimination on the basis of disability is under the Rehabilitation Act"); Young v. U.S. Dept. of Homeland Sec., 10–cv–9571, 2011 WL 6057849, at *1 n. 1 (S.D.N.Y. Dec. 5, 2011) (Sullivan, J.) (treating plaintiff's request to amend his complaint to add a claim under the ADA as a request to amend to add a claim under the Rehabilitation Act).

Plaintiff asserts Defendant discriminated against her on the basis of her sex, age, and disability. Compl. at 3. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, this Court grants Defendant's motion in its entirety.

## I. FACTUAL BACKGROUND

Defendant is a federal agency and an employer within the meaning of Title VII, ADEA, and the ADA. Plaintiff, an African–American female who was over the age of forty at the time of the events giving rise to this action, was a sales and service associate with Defendant and had worked for Defendant since 1988. Decl. of Rosemary Hendry ("Pl.'s Decl."), at 13; Compl. at 3; Decl. of Scott R. Landau ("Landau Decl."), Ex. 1 (Pl.'s Dep. Tr.), at 48–49.

### Plaintiff's History of Absences and Tardiness

Over the course of Plaintiff's employment with Defendant, Plaintiff was repeatedly cited for absences and tardiness. From November 16, 2004 to December 13, 2007, Plaintiff received five separate disciplinary letters of warning or notices of suspension for failing to report for duty or being absent without leave ("AWOL"), as well as for being tardy. In each of these instances, Plaintiff missed at least eleven days of work, and sometimes as many as twenty-nine days of work, over a period of two or three months, and was up to 4.33 hours tardy for those shifts for which she appeared. Landau Decl., Exs. 3–6, 8, 10.

On February 28, 2008, after Plaintiff failed to report for duty or was AWOL on twenty-nine days over the course of two months, Defendant notified her that she would be removed from her position effective April 7, 2008. Landau Decl., Ex. 12. Plaintiff contested her removal, and, after

negotiations, Plaintiff and Defendant signed a "Settlement Agreement—Last Chance Agreement" (the "2008 Last Chance Agreement") which affirmed that Plaintiff's removal was "just and proper" but nonetheless modified the removal to a 21–day suspension. Landau Decl., Ex. 13. The 2008 Last Chance Agreement offered Plaintiff "a final opportunity to demonstrate that she can adhere to the rules and regulations of the Postal Service," and provided that if she violated any of the terms and conditions of the agreement she would be removed from service. Landau Decl., Ex. 13. On August 22, 2008, Plaintiff received a second notice of removal, effective September 26, 2008, after accruing nine days of absences over a six-week period. Landau Decl., Ex. 14. Again, the removal was modified to a 21–day suspension. Landau Decl., Ex. 15.

### The "Last" Last Chance Agreement

On January 28, 2009, Defendant provided Plaintiff with a third notice of removal "for failure to follow instructions" and "failure to be regular in attendance," citing eighteen days on which Plaintiff had failed to report for duty as scheduled over a three-month period. Pl.'s Ex. C1. However, on March 12, 2009, Plaintiff and Defendant signed a second "Last Chance Settlement Agreement" (the "2009 Last Chance Agreement") which acknowledged that the notice of removal was "issued for just cause," but nonetheless modified the removal to a 28–day suspension. Pl.'s Ex. C1. The 2009 Last Chance Agreement provided Plaintiff with "a firm choice between rehabilitation and removal." Pl.'s Ex. C1. Plaintiff agreed "to abide by all postal rules, regulations and policies, including but not limited to adhering to her assigned schedule, being regular in attendance, following absence reporting procedures and obeying the instructions of her supervisor." Pl.'s Ex. C1. The agreement speci-

fied that if Plaintiff incurred more than three unscheduled absences within a 90 day period or was absent without official leave once during the period of the agreement, she would be immediately removed. Pl.'s Ex. C1.

On March 2, 2009, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") based on her cervical and lumbar dysfunction. Pl.'s Ex. C6; Pl.'s Decl., at ¶ 3. Plaintiff subsequently submitted Form WH–380–E, which was completed by a medical provider, indicating that her condition would likely last for the rest of her "lifetime" and that she would need FMLA leave for treatment about once or twice a month. Compl., Ex. C11 (Pl.'s Form WH–380–E). On April 3, 2009, Defendant approved Plaintiff's FMLA eligible status. Pl.'s Ex. C9. However, on August 18, 2009, after observing that several of Plaintiffs requests for FMLA leave between April and August 2009 "occurred in conjunction with a holiday and/or rest day," the FMLA Coordinator provided notice to Plaintiff that the "information provided by your health care provider does not explain the medical necessity for leave in conjunction with your days off." Pl.'s Ex. C16. The FMLA Coordinator stated Plaintiff's pattern of absences had cast doubt on the employee's stated reason for the absence and that Plaintiff was required to provide recertification by September 3, 2009, later extended to September 23, 2009. Pl.'s Exs. C16, C19. Plaintiff failed to meet the deadline to submit her recertification. Pl.'s Decl., at ¶ 25. As a result, Defendant found that Plaintiff's absences on September 11, 14, 21, 22, and 23 were not FMLA protected. Pl.'s Ex. C19.

On October 1, 2009, Plaintiff failed to report for duty at 2:30 p.m. because she had to receive treatment for her FMLA condition and procure documentation for her recertification. Pl.'s Decl., at ¶ 30.

Plaintiff was attempting to obtain copies of her x-rays in order to convince her medical provider to recertify her condition. Pl.'s Dep. Tr. at 402–13. Plaintiff called Defendant's FMLA office to explain that she was having difficulty obtaining the recertification, and asked if they would call her supervisor to advise him she would be late that day. *Id.* at 413–14. Plaintiff did not want to call her supervisor because she "wasn't going to go through it with that man." *Id.* at 414. Plaintiff "was willing to work" but "was just late" because she was having trouble getting her recertification completed. *Id.* at 414. When the FMLA office indicated that they could not contact her supervisor, Plaintiff went to the FMLA office at her work "to show that [she] was willing to work that day." *Id.* at 415–18. Plaintiff saw her supervisor in the building but did not speak with him or tell him that she would not be working that day. *Id.* at 421–22. Plaintiff ultimately left and took the train home. *Id.* at 423.

After Plaintiff arrived home, she placed seven calls to Defendant's automated human resources system to report her need for an FMLA absence: one call at 4:11 p.m. and six calls between 9:57 p.m. and 11:31 p.m. Pl.'s Ex. C22. She placed three additional calls just after midnight the next day. Pl.'s Ex. C22. Plaintiff was absent on both October 1 and 2, followed by scheduled rest days on October 3 and 4. Pl.'s Decl., at ¶ 33. When she returned to work on October 5, she told her supervisor that she had experienced difficulties with the automated system and presented him with a note from her health care provider, dated October 1, 2009, which stated: "Ms. Hendry was here today for treatment today for a cervical spine condition" and that she was "unable to work because of her pain." Pl.'s Ex. C23; Pl.'s Decl., at ¶ 33. On October 8, 2009, Plaintiff provided a completed Form WH–380–E recertifying that she had an FMLA-eligible medical

condition. Pl.'s Decl., at ¶ 38; Pl.'s Ex. C27. Plaintiff's documentation was deemed insufficient, and she was deemed AWOL on October 1.

On October 9, 2009, Plaintiff was provided with a "Notice of Removal," effective November 20, 2009, based on her October 1 absence. Pl.'s Ex. C28. Plaintiff challenged her removal through an internal grievance procedure held with her union representatives and Defendant, but her challenge was denied. Pl.'s Ex. C1; Landau Decl., Exs. 24–25. Plaintiff's employment with Defendant was terminated on November 20, 2009.

### Administrative Complaints and Appeals

On November 23, 2009, Plaintiff contacted Defendant's Equal Employment Opportunity ("EEO") Counselor, alleging that Defendant had discriminated against her regarding a charge of AWOL on October 1, 2009. Compl. Ex. 1.1, at 2; Landau Decl., Ex. 26. Plaintiff filed a formal complaint of discrimination with Defendant on January 27, 2010, alleging that Defendant harassed her by "completing Retail Observation forms" on her, "threatening to fire her," "forcing her to repeat questions and upsell to customers," "scowling at her," "speaking 'too rough and nasty' to her," "being unnecessarily mean," "picking fights," "twisting the truth," and "hollering and threatening her." Compl., Ex. 1.1, at 14–15 (dismissal of formal EEO complaint). The EEO Counselor found that Plaintiff failed to allege that she had "received any discipline or suffered a present harm or loss with respect to a term, condition, or privilege of employment," and that she had therefore not suffered any legal injury. *Id.* The EEO Counselor further found that the isolated incidents described by Plaintiff were not sufficient to create a hostile environment. *Id.* Plaintiff's formal complaint did not mention the October AWOL charges that had been raised in Plaintiff's counseling session, and this issue was therefore deemed abandoned. Compl., Ex. 1.1., at 14 n.2. Accordingly, Defendant dismissed Plaintiff's complaint. Compl., Ex. 1.1, at 16. Plaintiff appealed to the United States Equal Employment Opportunity Commission, which found that Plaintiff's complaint had been properly dismissed. Landau Decl., Exs. 32, 33. The Commission did not address Plaintiff's earlier allegation that the charge of AWOL had been discriminatory, finding that she had abandoned that issue on appeal. Compl., Ex. 1.1, at 3.

Plaintiff commenced this action on December 15, 2010. She alleges that she "was forced to sign a made up document called a last chance agreement," that her "FMLA was suddenly rescinded for bogus reasons," that her "supervisors in conjunction with [her] union worked against" her, and that several of her supervisors or colleagues harassed her. Compl. at 4.

## II. STANDARD OF LAW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d

Cir.2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir.2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir.2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

## III. DISCUSSION

### A. Exhaustion

 Before bringing an action in a district court for discrimination under Title VII, the ADEA, or the Rehabilitation Act, a federal employee must first exhaust available administrative remedies.[3] *Miller v. Kempthorne*, 357 Fed.Appx. 384, 385 (2d Cir.2009) (applying exhaustion requirement to all three statutory schemes). If the employee is dissatisfied with the outcome of these administrative remedies, he or she may appeal to a federal district court, however the court is empowered to hear only those claims that were included in the EEOC charge or are reasonably related to those included. *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir.2002) (Title VII claims); *Malachi v. Postgraduate Ctr. for Mental Health*, 10–cv–3527, 2013 WL 782614, at *2 (E.D.N.Y. Mar. 1, 2013) (Mauskopf, J.) (ADA and ADEA claims). A claim is reasonably related if it "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" or "if it chronicles additional instances of discrimination carried out in essentially the same manner as those originally alleged." *Malachi*, 2013 WL 782614, at *2 (internal citations and quotation marks omitted). In addition, "a court may entertain a claim for retaliation against an employee for his or her opposition to the allegedly discriminatory practices." *Id.*

Because Plaintiff is *pro se*, this Court considers *sua sponte* whether her claims are sufficiently reasonably related to those raised before the EEOC. *Id.* However, even reading Plaintiff's pleadings before

---

**3.** Under the ADEA, a federal employee may choose whether to bring a claim before an administrative agency or a federal district court. 29 C.F.R. § 1614.201. However, "a plaintiff who chooses to begin the administra-tive review process is obliged to exhaust that review before filing a civil action." *Economou v. Caldera*, 286 F.3d 144, 149 n. 8 (2d Cir.2002).

the EEOC in the light most favorable to her and for the strongest arguments they suggest, this Court discerns no allegations in the formal proceedings below regarding the designation of her October 1, 2009 AWOL absence, her FMLA leave, or her ultimate termination. Instead, Plaintiff's allegations that Defendant employees, *inter alia*, spoke "too rough and nasty," were "unnecessarily mean," and "holler[ed] and threaten[ed] her," suggest, at best, a hostile environment claim. As such, Plaintiff's claims that she "was forced to sign a made up document called a last chance agreement," that her "FMLA was suddenly rescinded for bogus reasons," and that her "supervisors in conjunction with [her] union worked against" her, *see* Compl. at 4, are barred because she failed to exhaust her administrative remedies, leaving only her hostile environment claim.

### B. Plaintiffs ADEA, Title VII, and Rehabilitation Act Claims

Even setting aside Plaintiff's failure to exhaust her claims, this Court finds that all of Plaintiff's claims are meritless.

### 1. Plaintiffs Discrimination Claims

■ In evaluating discrimination claims brought under Title VII, the ADEA, and the Rehabilitation Act, courts in the Second Circuit apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). Under *McDonnell*, the Plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a pre-

ponderance of the evidence. *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817; *Bucalo*, 691 F.3d at 129. If the plaintiff establishes a *prima facie* case, the defendant may rebut the presumption of discrimination by coming forward with evidence supporting a legitimate, nondiscriminatory basis for its actions. *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817; *Bucalo*, 691 F.3d at 128–29. If the defendant meets this burden, the plaintiff must then show by a preponderance of the evidence that the reasons proffered by the defendant were merely pretext for discrimination. *McDonnell*, 411 U.S. at 804, 93 S.Ct. 1817; *Bucalo*, 691 F.3d at 129. The ultimate burden of persuasion "remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In this case, Plaintiff cannot establish a *prima facie* case of discrimination under any of the three statutes. Although Plaintiff arguably meets several of the elements of a *prima facie* case—she is a member of a protected class;[4] she was presumably qualified for the position she had held for many years; and she suffered an adverse employment action because she was terminated—she has not established that this adverse employment action occurred under circumstances giving rise to an inference of discrimination.[5] *See Miller*, 357 Fed.Appx. at 387 (citing *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817). Plaintiff has not provided any evidence, either direct or circumstantial, that

---

4. For the purpose of deciding this motion with respect to Plaintiff's Rehabilitation Act claims, this Court will assume that Plaintiff had a disability within the meaning of the Act.

5. The elements of a prima facie claim of discrimination under the Rehabilitation Act are worded somewhat differently, but under that

Act Plaintiff is similarly required to demonstrate that she was "discharged because of her disability"—a standard she cannot meet for the reasons discussed in relation to her ADEA and Title VII claims. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994).

the imposition of a last chance agreement, loss of her FMLA-eligible status, the AWOL designation of her October 1 absence, or her ultimate termination were based on any protected characteristic. *See id.* To the contrary, Plaintiff has repeatedly admitted that impermissible considerations were not involved in these decisions. For example, Plaintiff explicitly wrote in her formal complaint that there was "no age discrimination." Landau Decl., Ex. 30. She also admitted during her deposition that her race had "probably nothing" to do with being asked to sign a last chance agreement, and that she "can't really say it had anything to do with [her] sex" either. Pl.'s Dep. Tr. at 221–23. Based on a full review of the record in this case, the Court finds that Plaintiff has not demonstrated any link between any of her protected characteristics and the actions of which she complains. Nor has she shown that she was treated differently from similarly situated individuals outside of her protected class. *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089. Plaintiff has therefore failed to establish even a *prima facie* case of age, sex, race, or disability discrimination.

Even if Plaintiff could establish a *prima facie* case of discrimination, the Court finds that the record is replete with undisputed evidence that Plaintiff's was frequently absent and tardy and that it was her own delinquency that led to her termination. The Court also finds it significant that Plaintiff has admitted that she was willing and able to work on October 1 but that she was running late because she was trying to get her recertification and that she thought it better to miss an entire day than to show up late. Pl.'s Dep. Tr. at 402–23; *see also* Compl., Ex. 1.1 at 37 (Decision of Arbitrator) (Ms. Hendry testified that "she would have worked on October 1, but she didn't expect to be running late, and the only way to save her job was to take the whole day off....."). Plaintiff having admitted that her absence was not due to any need for treatment based on her FMLA condition, it is clear that it was Plaintiff's own choices, and not any discrimination, that resulted in her termination.[6]

## 2. Plaintiffs Title VII Hostile Work Environment Claim

 To establish a hostile work environment claim, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations and quotation marks omitted). Not all verbal or physical harassment is prohibited, but only that based on a protected characteristic like race, age, or sex. *See Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see also Alfano,* 294

---

**6.** Plaintiff also argues that her FMLA-eligible status was improperly revoked. *See* Pl.'s Decl., at ¶¶ 20–23. To the contrary, Defendant had the right, pursuant to 29 C.F.R. § 825.308(c), to require Plaintiff to recertify her status based on Plaintiff's pattern of absences, which cast doubt on her stated reasons for missing work. This Court has reviewed that pattern of absences, and Plaintiff's additional evidence, and concludes that Defendant's request for recertification was proper. Regardless, Plaintiff has not alleged that her FMLA eligibility was revoked on the basis of an impermissible consideration, and even if Plaintiff had been FMLA eligible on October 1, 2009, her absence would not have qualified as an FMLA absence because all of the evidence shows that she was able to work and not seeking treatment during the hours she missed work.

F.3d at 377 (an employee must establish "a linkage or correlation [between the personnel decisions or actions and] the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). Moreover, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. 367.

Plaintiff's only allegations of harassment on appeal are that certain employees "threaten[ed] and holler[ed]" that they would terminate her and completed "excessive evaluations." Compl. at 4. Plaintiff also states that one individual was "abusive in many ways." *Id.* In addition, Plaintiff alleged before the EEO Counselor that Defendant harassed her by "completing Retail Observation forms" on her, "threatening to fire her," "forcing her to repeat questions and upsell to customers," "scowling at her," "speaking 'too rough and nasty' to her," "being unnecessarily mean," "picking fights," "twisting the truth," and "hollering and threatening her." Compl., Ex. 1.1, at 14–15 (dismissal of formal EEO complaint).

Even viewing the evidence in the light most favorable to *pro se* Plaintiff and for the strongest arguments they suggest, Plaintiff has not stated a hostile environment claim. Plaintiff has not alleged that any of the actions or harassment of which she complains occurred because of any of her protected characteristics. To the contrary, Plaintiff repeatedly testified that these actions were not motivated by discrimination. Plaintiff explicitly testified that no one besides her supervisor treated her poorly because of her age, sex, or disability. Pl.'s Dep. Tr. at 96(age), 109 (disability), 345(sex). Plaintiff further stated that she and her supervisor "didn't

get along for personal reasons," and that he was not nice to her because he thought she was "incompetent" and "nonproductive" and "did not kiss his butt." Pl.'s Dep. Tr. at 82, 97, 100–01. Under these circumstances, Plaintiff has not demonstrated that any of her claimed harassment was due to a protected characteristic, much less that it rose to a level that was severe or pervasive enough to create an objectively hostile work environment.

### 3. *Plaintiff's Retaliation Claim*

■ Construed generously, Plaintiff may have also brought a retaliation claim, apparently based on the argument that every time she called her union shop steward for assistance, Defendant "would come back with PDI's" and "removal papers." *See* Compl. at 3; Pl.'s Dep. Tr. at 165, 285–86. However, Plaintiff admits that her complaints to the union were generally about personal problems with individuals, being hollered at for no reason, being told she was incompetent, and similar issues. She does not allege that her complaints to the union were not based on discrimination, and thus these complaints do not qualify as a "protected activity" sufficient to state a claim for retaliation. *See Malaney v. Elal Israel Airlines*, 331 Fed.Appx. 772, 775 (2d Cir.2009).

## IV. CONCLUSION

For the reasons described above, this Court grants the motion for summary judgment in favor of Defendants and dismisses Plaintiff's complaint in its entirety with prejudice.

## SO ORDERED.